TORETTA v. WILMINGTON TRUST CO. et al.

No. 918.

District Court, D. Delaware.

April 11, 1947.

Herman Cohen (of Cohen & Cohen), of Wilmington, Del., for plaintiff.

Charles F. Richards (of Richards, Layton & Finger), of Wilmington, Del., for Wilmington Trust Co., trustee.

William S. Potter and Richard F. Corroon (of Southerland, Berl & Potter), both of Wilmington, Del., for the Regents of the University of Michigan.

RODNEY, District Judge.

This is a motion for judgment on the pleadings under Rule 12(c) of the Rules of Civil Procedure, 28 U.S.C.A. following section 723c, on the ground that the complaint fails to state a claim upon which relief can be granted. All of the material and well-pleaded allegations of the complaint will, for the purposes of this motion, be taken to be true.

The sole ultimate question to be decided is whether the trustee under the terms of an original trust agreement, and its supplements, should pay to the plaintiff, in addition to the amount of a benefaction payable thereunder, an additional amount equal to the United States income tax assessed against the plaintiff (beneficiary) on account of such benefaction.

It is not here questioned but that a donor or settlor of a trust may, if he so desires, by apt and appropriate language in the trust agreement, direct a trustee to pay a yearly benefaction and, in addition thereto, also to pay to or for the beneficiary the amount of any specified income tax assessed upon the amount of such annual payment.

The sole question in this case, then, is whether the settlor of this trust has used apt and appropriate language to indicate an intention to authorize the trustee to pay the income tax assessed on the annual payment as well as to make the payment itself.

Frederick Reynolds Babcock, a resident of Illinois, on June 19, 1934 entered into an elaborate trust agreement with the Wilmington Trust Company, one of the defendants. By this agreement the donor reserved to himself the income from the trust fund for and during his own life. The agreement, by Item Third, provided that after the death of the donor certain annual payments should be made to designated individuals for and during the lives of such individuals. This Item Third, as amended, is the crucial portion of the agreement.

The donor made two supplemental agreements varying the terms of the original agreement, such supplements being dated respectively December 16, 1935 and June 5, 1937.

The donor died December 3, 1937.

While the language of the original Item 3 was subsequently changed and our present problem directly concerns the language of Item 3 as contained in the second supplement, yet the intention of the testator can best be ascertained by a consideration of each Item Third in turn and as it would have been construed if the donor had died while such item was in force, and thus to ascertain what, if any, change in intention can be discerned from the change in language.

The original trust agreement of 1934, after providing for payment of income to the donor of the trust fund for life, then provides:

"Third: Commencing with the date of the death of the Donor, the Trustee shall accumulate the income from the trust fund, until the end of each calendar year. From each of such accumulated calendar year's income, the Trustee shall deduct its compensation herein provided for and all charges, including taxes levied, attorney's fees, or other charges properly chargeable against the trust fund and from the balance of such annual income shall be distributed annually in one payment to each as follows:

"(a) [To Ella L. Babcock, $10,000]

"(b) [To Robert S. Babcock, $5,000]

"(c) To Marie Louise Toretta, of Nice, France, during her life, the sum of Three Thousand Dollars ($3,000)."

The agreement also provides:

"If at any time or times for any reason the accumulated annual income of the trust shall not be sufficient to provide for the payments to be made to Ella L. Babcock, Robert S. Babcock and Marie Louise Toretta, then the Trustee may, in its uncontrolled discretion apply so much of the principal of the trust fund as and when added to the income will equal the total sum required to be paid to them."

It is here expressly noted that under this original agreement the allowable encroachment on principal of the trust fund for the discharge of the annual payments to the beneficiaries, if the income of the trust fund was not sufficient for the purpose, was not an absolute duty of encroachment in all events but was a power "in the uncontrolled discretion of the Trustee." There is no language here that establishes the nature of the interest of the beneficiary as a "gift" or "annuity" payable in the specified amount in all events and regardless of the sufficiency of income of the trust estate. There is no language in this original trust agreement as to encroachment on principal that would make precisely applicable such cases as Coleman v. Commissioner, 3 Cir., 151 F.2d 235; Burnet v. Whitehouse, 283 U.S. 148, 51 S.Ct. 374, 75 L.Ed. 916, 73 A.L.R. 1534; or Helvering v. Pardee, 290 U.S. 365, 370. 54 S.Ct. 221, 78 L.Ed. 365. It would seem that if Babcock had died without changing this provision of the trust agreement, the beneficiaries would have paid income taxes on the income received by them from the trust estate. (Rathborne v. Commissioner of Internal Revenue, 37 B.T.A. 936; 6 Mertens Federal Income Taxation 290.) This would not be because the donor of the trust had expressed any particular intention as to income tax but because the tax laws made the income received by the beneficiary taxable. This matter is not determined for the obvious reason that Babcock did not die at that period and the quoted paragraph never became effective.

Certain provisions of the original agreement, however, are material to consider in arriving at the intent of the donor. Clearly the income of the trust fund was to be accumulated until the end of each calendar year. The trustee would then deduct:

(1) The compensation to the trustee.
(2) All charges:
  (a) taxes levied;
  (b) attorney fees
  (c) other charges properly chargeable against the trust fund.

After arriving at the net annual income of the trust fund the payments heretofore indicated are to be distributed "in one payment" to the named persons. Presumably any balance of income is to be accumulated and paid, after the death of all the life beneficiaries, under Item Five to the Regents of the University of Michigan. If the income of the trust fund was insufficient to make the stipulated payments then, as indicated, the Trustees could exercise an uncontrolled discretion as to encroachment on the principal to the extent required to make the payments.

If Babcock had died while this original agreement was in force, then clearly the trustee would only have been justified in paying the plaintiff the sum of $3,000 per annum and would not have been chargeable with any additional income tax assessed against the plaintiff personally, and would not have been justified in repaying to her the amount of such tax if paid by her.

The only deduction to be made in arriving at the net income would be those items properly chargeable against the trust fund, as such, and not items chargeable personally against a beneficiary of that fund.

On December 15, 1935 Babcock executed a supplemental trust agreement. By it the provisions of Item Third, insofar as here material, are not changed, but the supplement provided:

"Paragraph 'Third' shall be amended by adding thereto the following:

"After the decease of the Donor, all income of this Trust Estate received by the Trustee and remaining, after the payment to beneficiaries as in this paragraph pro-

vided and after the payment of all charges of every kind including payment of or a reserve for taxes on income or property, as well as Federal Estate and State Inheritance Taxes, shall be paid after the close of each year to the Regents of the University of Michigan to be applied by the said Regents for the use and benefit of the 'Babcock Urological Endowment Fund' in accordance with the terms of paragraph "Fifth" of the original Trust Agreement."

I shall not pause to discuss this supplement. Its sole apparent effect is to make the surplus income of the trust remaining after the payments to the named beneficiaries, payable at the close of each calendar year to the Regents of the University of Michigan instead of being accumulated during the lives of the named beneficiaries as provided in the original agreement. It indicated no intention to change any interest of the named beneficiaries, including the plaintiff. It is true that certain additional language is used in describing the charges to be made against the income before any payments to the Regents, but there is no disclosed intent to affect the amount payable to the plaintiff or other named beneficiary.

On June 5, 1937 the second and final supplement was executed. This supplement recited the original trust agreement and intention to amend it "in the following particulars:"

"A. Paragraph described as 'Third,' commencing on page two of the original or initial trust agreement described above, shall be eliminated in its entirety. This paragraph to be so eliminated provides for benefits to be paid to Ella L. Babcock, Robert S. Babcock and Marie Louise Toretta.

"B. In lieu and in place of said paragraph 'Third' so eliminated the following paragraph shall be substituted.

"Third: Commencing with and after the death of the Donor, the Trustee shall, after the payment of all charges including taxes levied or finally assessed, attorneys fees, Trustees fees, or charges of the Adviser to the Trustee, pay to the following persons the following amounts of money out of the income of the trust estate during their respective lives or as hereinafter provided:

"1. [To Robert S. Babcock, $7,500 annually].

"2. [To Mary Babcock, $2,500 annually].

"3. To Marie Louise Toretta, of Nice, France, during her life, the sum of Six Thousand Dollars ($6,000) annually in equal monthly installments.

"If at any time or times for any reason the income from the trust estate is insufficient to meet the required payments provided for in this paragraph "Third", then the trustee shall apply so much of the principal or corpus of the trust estate as shall be necessary to make up such deficiency of income.

"The amendment to paragraph "Third" as provided and contained in the Supplemental Trust Agreement of December 16th, 1935 shall continue in effect as in said Supplemental Trust Agreement provided and is hereby made a part of this substituted paragraph "Third."

This last supplement made definite changes as to certain features of the original trust agreement.

1. It changed the amount of the benefaction to the plaintiff from $3,000 to $6,000 per annum.

2. It changed the amounts and terms of other benefactions.

3. It eliminated one beneficiary and included another.

4. It changed the manner of payment to all beneficiaries from one payment at the end of each calendar year and, as to this plaintiff, made the annual payment of $6,000 payable in monthly installments.

5. By the revocation of the clause leaving to the uncontrolled discretion of the trustee the question of encroachment on principal if the income from the trust fund proved insufficient to make the payments, and, by substituting therefor a provision that such encroachment on capital should be mandatory where the income of the trust fund was insufficient, it would seem that the nature of the benefactions to the named beneficiaries was changed from an interest

in income to an "annuity" or "gift" of a specified annual sum.

The original and supplemental trust agreements are strikingly alike as to the deductions or charges to be made by the trustee from the gross income of the trust estate in arriving at the net income. In both, specific mention is made of the trustee's fees or compensation, attorney's fees, and, in one, provision is made for "taxes levied" and, in the other, "taxes levied or finally assessed." In the supplement the charges of the adviser to the trustee are provided for. In the original the trustee is directed to deduct the charges just mentioned "and other charges properly chargeable against the trust fund" and then to make the stipulated payments, and by the supplement the trustee makes the payments after the deduction "of all charges." No change of intent is discernible nor any intention to permit any charges to be made by the trustee under the supplement which would not have been "properly chargeable" under the original agreement.

The donor, Babcock, died December 3, 1937. At that time the terms of the trust agreement, as here material and, as amended by the second supplement, became effective. At that time the Income Tax Law of June 22, 1936 was in force. By Sec. 162 (b)[1] the net income of the estate was computed in the same manner as that of an individual, except that the trustee was allowed as an additional deduction the amount of income currently distributed by the fiduciary to the beneficiary, and the amount of this deduction was to be included in the net income of the beneficiary whether distributed or not.

It is at this point that the cases of Burnet v. Whitehouse, 283 U.S. 148, 51 S.Ct. 374, 75 L.Ed. 916, 73 A.L.R. 1534; Helvering v. Pardee, 290 U.S. 365, 370, 54 S.Ct. 221, 78 L.Ed. 365 and Coleman v. Commissioner, 3 Cir., 151 F.2d 235, become particularly applicable. Those cases held that where an annual benefaction was payable as a specific sum at all events and regardless of the existence of sufficient trust income, and where the corpus of the fund must be encroached for the payments,

such payments to the beneficiary were not payments of income but constituted a "gift" or "annuity" and that the beneficiary was not liable for income taxes thereon. See also 6 Mertens Law of Federal Income Taxation 287. As a consequence the trustee could not take such payments as deductions and the trustee paid an income tax on the income of the trust estate.

The complaint alleges that this was the course pursued by the trustee from 1937 until the passage of the amendatory act of 1942.

The second supplement made radical changes in the amounts and times of payment of the benefactions mentioned and changed certain persons to be benefited. The changes are, of course, assumed to have been intentional. We may also assume, perhaps, that the donor was familiar with the holding of the cases just cited and, by the change of language as to the encroachment on capital by the trustee, desired to make the trust estate liable for income tax and to put the beneficiaries in a class where they would not be liable for the tax. No language of the trust agreement, however, is even fairly susceptible to the thought that the donor had in mind any future change in the tax law or intended to make the beneficiaries exempt from any tax which future legislation might assess against the beneficiaries. No presumption of knowledge of existing law, of and by itself, extends to an intention to forecast the trend of future legislation and to provide for the course such legislation might take some years in the future. To have such effect the language of the instrument must be reasonably clear and specific.

In 1942 the amendatory statute just mentioned was enacted as Sec. 111 of Revenue Act of 1942 and, as material to this case, is found as Sec. 162(d) (1) in 26 U.S.C.A. Int.Rev.Code. The effect of this statute, as stated in Coleman v. Commissioner, supra, was to change the law as pronounced in Burnet v. Whitehouse and Helvering v. Pardee, supra. A concise statement of the effect of this amendment, as applied to

---

[1] 49 Stat. 1706, 26 U.S.C.A. Int.Rev.Code, § 162(b).

this case, may be that in those estates or trusts where an annual benefaction is required to be currently distributed in whole or in part from capital in case of insufficiency of income for the purpose, to make the beneficiary liable for the tax to the extent that the income of the trust was actually distributed to such beneficiary.

■ The complaint alleges that since 1942, and as a consequence of the statutory amendment just referred to, the plaintiff has been assessed and has paid the income tax and such payment constitutes the basis of this suit.

Perhaps the fundamental feature in this case lies in the possible misconception of the nature of the income tax. Prior to the amendment of 1942 it is incorrect to say that the trustee paid the income tax of the plaintiff or for the plaintiff. Under the then law the plaintiff was not liable at all for income tax on the amounts paid to her from this trust estate and therefore no tax was paid for her. After the amendment of 1942 the status of the plaintiff was changed and she then became taxable. The tax assessed against the plaintiff is not paid, primarily or necessarily, out of the annuity she receives from this estate, but is simply a tax imposed because she does receive the stipulated amount as income.

The plaintiff places reliance upon the three following cases. They will not be discussed at length because such course would have little or no compensating value. In Johnson v. Western Union Telegraph Co., 293 N.Y. 379, 57 N.E.2d 721, the facts were so different as to leave little analogy to the present case. In Re Pflomm, 241 N.Y. 513, 150 N.E. 534, and In re Ball's Will, Sur.Ct., 24 N.Y.S.2d 432, the language used by the respective testators in expressing their intention bore so little similarity to the language of the present case that those cases are not greatly persuasive.

The plaintiff seeks also by certain language of the agreement and of the contemporaneous will to show some surrounding circumstances indicative of the intention of the settlor of the trust, such as the intention to treat this plaintiff as of the

same nature as an heir at law and thus to become a favored object of his bounty. These have been considered but they throw no light upon the liability of the trustee for the payment of the income tax which the law enacted after the death of the settlor has cast upon the beneficiary.

■ In the last brief of the plaintiff an entirely different position is assumed by her. Attention is there drawn to Item Seventh of the original agreement, not affected by either supplement. Under this Item the donor reserved the power of amending the trust agreement, of adding or changing beneficiaries or of making substantially any other change desired. The item states:

"* * * Any instrument signed by the Donor and delivered to the Trustee, and in effect directing the Trustee upon the Donor's death, to pay any moneys to any person or persons therein named, shall be and be deemed to be an appointment to the persons therein named of a part of the trust estate at the time and to the extent of the sum directed to be paid to such person, and to that extent an amendment of this instrument and of the trusts hereby created, and any amount or amounts so directed to be paid shall be charged against and be deemed a reduction of the general principal held by the Trustee at the time of the Donor's death prior to its division into separate trust funds. * * *" It then provides that if any such payment exceeds $10,000 it must be done with the formality of a deed conveying real estate.

Under this item it is urged by the plaintiff that the supplemental agreement of June 5, 1937 directing the trustee to pay the plaintiff $6,000 per annum in quarterly payments must be deemed to be an appointment by the donor to the plaintiff of a portion of the trust estate and a consequent reduction of the principal. It is then argued that such payment from principal would not be subject to income tax. Passing the question as to whether Item 7 was intended for anything other than to cover the possibility of a donation of a specific amount if the donor chose later to make one, and passing any inconsistency of position of the plaintiff, one thing is clear. If

the plaintiff be correct as to Item 7 then she was never liable for any income tax and should have paid none. Her remedy then, seeking reimbursement, is to that authority to which it was paid. I have carefully searched for any obligation on the trustee to repay to the plaintiff the amount of income tax which had been assumed and conceded to have been validly assessed against the plaintiff and paid by her. It would be a vain search for language creating any duty or liability on the trustee to repay to the plaintiff any sum paid out by her but for which she was never liable and which she should never have paid.

In the complaint it is asserted that the legal position of the other beneficiaries is similar to that of the plaintiff. That would seem to be true and, if the trustee is under obligation to return to the plaintiff the amount of the United States income tax paid by the plaintiff, then the same obligation exists as to the other beneficiaries. What is not quite so clear is whether the liability is limited to the United States income tax. It is true that this suit only involves the United States income tax, but if the liability of the trustee is to pay all charges assessed against the beneficiaries with reference to the annuities received by the respective beneficiaries, then it is difficult to see the present limit of such liability. If any of the beneficiaries are or become liable for a state income tax or other income tax of similar nature, it is difficult to see why such tax would not be in the same position as that of the United States income tax. It is not disclosed whether the other beneficiaries reside in States or jurisdictions having income taxes or where the plaintiff, herself, is a resident. She is alleged to be a citizen of France but the complaint is silent as to her residence. In re Johnson's Estate, 214 App.Div. 1, 211 N.Y.S. 276, modified and affirmed as In re Pflomm, 241 N.Y. 513, 150 N.E. 534, cited by plaintiff, involved both United States income tax and income tax of the State of New York.

I shall not pause to consider whether any additional sum paid to the plaintiff over and beyond the sum of $6,000 per annum and representing the amount of United States income tax paid by her (if required to be made by the trustee) would, in itself, be such a further payment to her as would subject it also to tax. That, perhaps, has no strict place in the determination of the liability of the trustee.

I have looked in vain for any language which would, in my opinion, show any intent on the part of the donor that the plaintiff should receive any sum whatever in addition to the sum of $6,000 per annum payable in monthly installments. Those payments concededly have been made. I have found no language authorizing other payments of any nature.

The complaint fails to state a claim upon which relief can be granted and the motion of the defendants for judgment on the pleadings must be sustained.