Chicago Title and Trust Company, as Executor of Will of Henry C. Schwab, Deceased, and said Chicago Title and Trust Company and David Bluford, as Trustees of Residuary Trust Created by said Will, Appellees, v. Goaldia Beryl Schwab, Appellant, The Northern Trust Company, as Executor Under Will of Lottie S. Foreman, Holman D. Pettibone, David Bluford, and Lazarus Krinsley, as Trustees of the Charles H. and Rachel M. Schwab Memorial Foundation, a Charitable Trust Created by Will of said Henry C. Schwab, Deceased, and Ivan A. Elliott, as Attorney General of State of Illinois, Appellees.

Gen. No. 45,671.

233

Opinion filed June 9, 1952. Released for publication June 30, 1952.

SCHUYLER, RICHERT & STOUGH, of Chicago, for appellant; DANIEL M. SCHUYLER, and JAY STOUGH, both of Chicago, of counsel.

IVAN A. ELLIOTT, Attorney General of State of Illinois, and SCHULTZ, KRINSLEY, VOORHEIS & HEDBERG, all of Chicago, for defendants-appellees; ROBERT J. BURDETT, Assistant Attorney General, and RAYMOND HARKRIDER, both of Chicago, of counsel.

SYLVANUS GEORGE LEE, of Chicago, for plaintiffs-appellees.

MR. PRESIDING JUSTICE BURKE delivered the opinion of the court.

On December 14, 1937, Henry C. Schwab of Chicago and Goaldia Beryl Winters of Wilmette entered into an antenuptial settlement agreement at Chicago. On the following day they were married. At that time he was 70 years of age and she was 50 years of age. Following the marriage and on that day he executed his will, which was subsequently amended by three codicils. He died on March 6, 1941, leaving the last will and three codicils, all of which were admitted to probate in the probate court of Cook county on April 17, 1941. By his will he nominated the Chicago Title and Trust Company and David Bluford executors of his will and letters testamentary were duly

235

issued to them. On March 17, 1942, Bluford resigned as executor and since then the trust company has continued to act as sole executor. The trust created by Article Four of the will is hereinafter referred to as the "residuary trust." The trust company and Bluford accepted the offices of trustees of the residuary trust. Article Nine of the will created the Charles H. and Rachel M. Schwab Memorial Foundation hereinafter referred to as the "foundation." Holman D. Pettibone, David Bluford and Lazarus Krinsley accepted the offices of trustees of the foundation. Article Two of the will disinherits testator's son "who now resides in England." The deceased's brother, Jerome C. Schwab, predeceased him. Mrs. Schwab and decedent's sister, Lottie S. Foreman, survived decedent, and were respectively 54 and 78 years of age at the time of his death. Mrs. Foreman was declared incompetent in 1947 and the Northern Trust Company was appointed conservator of her estate. On January 23, 1951, she died. Mrs. Schwab did not renounce the will and has from time to time received many articles of personal property under the will.

On January 25, 1950, the trust company, as executor and residuary trustee, and Bluford, as residuary trustee, filed a complaint in chancery in the circuit court of Cook county against Mrs. Schwab, Mrs. Foreman, the conservator of the latter's estate, the trustees of the foundation and the Attorney General of Illinois, and asked to construe the will, to declare the rights of Mrs. Schwab thereunder and to instruct plaintiffs with respect thereto. The principal issue in the case arises out of the direction to pay the widow an annuity of $20,000 a year. At the time Mr. Schwab's will was executed, and when he died, no federal income tax was payable by the recipient of an annuity of the character created by him. Such tax was payable by the fiduciary charged with paying the annuity. Since his death the

236

federal income tax law has been amended to provide that the primary burden for the payment of such income taxes rests on the annuitant. In an answer and counterclaim Mrs. Schwab points out that the amendment to the income tax law has substantially reduced her net income after taxes and asserts that the taxes for which she has become primarily liable should either be paid by the residuary trustees, or that she should be reimbursed for such taxes. Her contentions are based on the provisions of the will and the circumstances, including the antenuptial agreement, surrounding its execution. The foundation trustees and the Attorney General say that Mr. Schwab did not intend to give his widow $20,000 tax-free. The case was heard by the chancellor upon the pleadings, the statements of counsel, stipulations of fact, the exhibits and oral testimony. A decree was entered dismissing the widow's counterclaim for want of equity and finding that neither the residuary nor the foundation trustees were obliged to pay or reimburse her for federal income taxes attributable to the inclusion in her taxable income of the annuity created for her, and that she was entitled to receive no more than $20,000 a year under the will. Appealing, Mrs. Schwab asks that the decree be reversed and that a decree be entered finding that it was the intent of Mr. Schwab that the annuity be paid to her as a net sum, free and clear of any liability to pay any income taxes which might be assessed thereon; that the 1942 amendment to the federal income tax law "shifting the liability" for such taxes from the residuary trustees to her cannot interfere with Mr. Schwab's manifest intent that she receive $20,000 a year as a net sum, free of liability for federal income taxes; that the residuary trustees pay or reimburse her for any and all federal income taxes which may have been or may in the future be assessed against her since 1941 by reason of the

237

inclusion in her taxable income of all or any part of the annuity bequeathed her under her husband's will; that the residuary trustees pay to or reimburse her for federal income taxes and interest thereon for any year or years ended prior to the entry of a final decree; and that they pay or reimburse her for such taxes and interest out of the corpus of the residuary trust.

The antenuptial agreement provided that if Mr. and Mrs. Schwab were married and he should be survived by her as his widow and should leave a will giving and bequeathing to her not less than $20,000 a year for life, then she would accept such bequest in lieu of and in full settlement of any and all rights as his surviving spouse, either under the common law or under any present or future statutory law; that if Mr. Schwab made the bequest and if it should be "held or decreed to be invalid or ineffective by any court of competent jurisdiction . . . or . . . ineffective to yield" her not less than $20,000 a year for life, then she should be entitled to all her statutory rights as a widow in his estate notwithstanding the acceptance by her of any benefits under the will. In the agreement Mr. Schwab covenanted that in the event of their marriage he should not by virtue thereof acquire or claim to have any rights as surviving spouse, heir at law or distributee, either under the common law or any present or future statutory law with respect to any property or estate presently or thereafter acquired by her. The antenuptial agreement and will exhibit evidence of careful draftsmanship and consideration of the future. For instance, the agreement has attached thereto as an exhibit a detailed statement of the assets and liabilities of Mr. Schwab and a proviso that in the event any minor child or children of the marriage should be living at the time of his death, the widow should be entitled to her award and homestead rights in addition to the bequest. It will be noted

238

that the agreement waives and relinquishes the rights of each spouse either under the common law "or any present or future statutory law" with respect to the present or future property of the parties. After appointing executors and making certain bequests, Article Four gives the residue of the testator's estate to the residuary trustees in trust to pay, out of the net income, $20,000 a year to Mrs. Schwab for life, $6,000 a year to testator's sister, Mrs. Lottie S. Foreman, for life, and $6,000 a year to testator's brother, Jerome C. Schwab, who predeceased him. To the extent that the income from the trust may be insufficient to pay the annual sum of $20,000 a year to Mrs. Schwab, that sum is made a charge upon the corpus of the trust, but any like intent as to the sums payable to his sister and brother is expressly disclaimed. If there is any income left over after the payments described have been made, that income is to be paid over to the foundation trustees to be administered for charitable purposes, as provided in Article Nine of the will. The trust created by Article Four is to end when the widow, sister and brother have all died, at which time the corpus of the trust is to be paid over to the foundation trustees to be held by them in trust for charitable purposes. Both the residuary trustees and the foundation trustees are given broad discretionary powers.

Following their marriage Mr. and Mrs. Schwab went on a wedding trip which lasted six months. In Chicago they occupied an entire wing in the Edgewater Beach Hotel, expensively furnished by him, for which he paid $600 a month rent. They had two automobiles, one which was kept on her New Trier Township property. They took trips together to Florida and Cuba. Later they moved to a seventeen room penthouse for which they paid $500 a month rent. She did not do the cooking or housework. In addition to paying the household bills he gave her $500 a month spending

239

money. In accordance with the terms of the will certain tangible personal property was distributed to her. She has also received $20,000 a year from the executors and residuary trustees. According to the federal income tax laws existing at the time Mr. Schwab made his will and at the time of his death, she was not required to pay any federal income tax on this money, since, under the terms of the will, she was entitled to receive $20,000 a year at all events even though the income from the residuary trust should be insufficient to discharge these payments. The residuary trustees, however, were required to and did pay the federal income tax assessed on this money from the date of Mr. Schwab's death to and including December 31, 1941. On October 21, 1942, the federal income tax laws were changed so that to the extent that payments to a beneficiary are actually made out of income, such payments constitute taxable income to the beneficiary. This change in the law applies to income tax years commencing after December 31, 1941.

As a result of the change of the tax law the residuary trustees for the years 1942 through 1949 have had available for distribution to the foundation trustees, and have distributed to them, upwards of $55,000 more than would have been payable to the foundation trustees had the income tax law remained as it was at the time when the will was made and when testator died. The widow, on the other hand, has been required, for the years 1943 through 1949, to pay to the Federal Government upwards of $24,000 more than she would have been required to pay had the income tax law remained as it existed when Mr. Schwab made his will and when he died. In addition she may, for the years 1946 through 1949, have to pay additional taxes and interest aggregating almost $32,000, for during some of the years in question she attempted to treat her $20,000 a year as a partially taxable annuity and

240

reported only a part of it as taxable income. She has consented to the assessment of a deficiency in her federal income taxes for the year 1947 because the Commissioner of Internal Revenue has asserted that the entire amount of her annuity is taxable to her. There are at least $1,750,000 of assets in the residuary trust and its net income during the past seven fiscal years, ending February 28, has been $39,527.79 for 1944, $40,792.40 in 1945; $44,089.70 in 1946; $47,736.79 in 1947; $48,195.29 in 1948; $47,330.36 in 1949 and $54,704.14 in 1950. Of this net income the excess over $26,000 paid to Mrs. Schwab and Mrs. Foreman has been distributed to the foundation trustees, who in turn have distributed it to various Illinois charities. Mrs. Schwab has assets of her own consisting of real estate in New Trier Township, about five acres of heavily wooded land improved by three buildings and worth between $60,000 and $80,000; a piece of commercial real estate at Orlando Lakes, Wisconsin, which she purchased for $5,000; some real estate at Duck Lake, Michigan; and cash, stocks and bonds aggregating between $200,000 and $250,000 in value. Mr. Schwab gave her a little over one-half of what she owns and he knew the extent of her separate property. At the time her brother made his will, when he died and thereafter, Mrs. Foreman had an estate of ample size to support her in the manner in which she was accustomed to living, apart from the $6,000 income gift made to her in the will. Mrs. Schwab stipulated that she wanted no relief which would impinge upon Mrs. Foreman's right to receive $6,000 a year. On August 10, 1941, the Commissioner of Internal Revenue ruled that the foundation, because it was organized and operated exclusively for charitable purposes, was exempt from federal income taxes under Sec. 101 (6) of the Internal Revenue Code, and that contributions made to the foundation were deductible by

241

the donors in arriving at their taxable net income in the manner and to the extent provided; that bequests, legacies, devises or transfers to or for the use of the foundation were deductible in arriving at the value of the net estate of a decedent for estate tax purposes in the manner and to the extent provided; and that gifts of property to the foundation were deductible in computing net gifts for gift tax purposes in the manner and to the extent provided.

Mrs. Schwab asserts that her husband's will, without any reference to surrounding circumstances, clearly shows that he intended that she should receive the $20,000 annually as a "net sum" free of any liability on her part for the payment of income taxes thereon, and points to paragraph 4 of Article Four which states that if "my wife survives me then the trustees shall pay to her out of the net income derived from the residuary trust the sum of $20,000 a year as long as she lives," and to paragraph 8 of Article Four which provides that if the total net income derived from the residuary trust available for distribution on any income payment date "during the life time of my wife should be insufficient to pay in full the sum hereinabove in paragraphs 4 and 7 of this Article Four provided to be paid to my wife on such income payment date, then and in such case no payments shall be made on such income payment date to the persons named in the foregoing paragraphs 5 and 6 of this Article Four, but all such net income as is available for distribution on such income payment date shall, on such income payment date, be paid to my wife, and the trustees shall also, on such income payment date, pay to my wife out of the corpus of the residuary trust an amount equal to the difference between such net income available for distribution on such income payment date and the sum hereinabove in paragraphs 4 and 7 of this Article Four provided to be paid to my wife on such

242

income payment date.'' Paragraph 7 of Article Four provides that the payments under paragraphs 4, 5 and 6 of that article to be made to Mrs. Schwab, his sister and brother, shall be paid to the respective beneficiaries in equal quarterly payments on the 15th day of January, April, July and October of each year, the first of such payments to be made on the first of such days occurring after the death of the testator. Appellant states that testator thus provided that she receive $20,000 a year for life at all events whether the income from the residuary trust should be sufficient to pay her that amount or not.

It was decided in *Irwin v. Gavit*, 268 U. S. 161, (1925) that where the property was by will bequeathed to trustees to pay the income to a designated beneficiary, such income was taxable to such beneficiary and was not exempt as property acquired by gift, bequest, devise or inheritance. In *Burnet v. Whitehouse*, 283 U. S. 148 (1931), it was held under the 1921 Revenue Act that a testamentary gift or an annuity for life, payable primarily out of income and out of corpus if necessary, constituted property acquired by gift, bequest, devise or descent and was not taxable to the beneficiary, even though the annuity was in fact paid out of income. In *Helvering v. Pardee*, 290 U. S. 365 (1933), it was decided that payments of income made by testamentary trustees in discharge of a life annuity given to testator's widow, which were payable primarily out of income and out of corpus if necessary, were not deductible by the trustees in determining the taxable income of the trust. The amendments of October 21, 1942, added to Sec. 22 (b) (3) of the Internal Revenue Code a provision that to the extent an annuity paid primarily out of income, and out of corpus if necessary, is actually paid out of income, such income shall not be excluded from tax in the hands of the beneficiary, and added par. (d) to Sec. 162 of the Code

243

providing that the income paid to the beneficiary can be deducted by the trust in determining the taxable income of the trust. These amendments apply to income tax years commencing after December 31, 1941. The *Burnet v. Whitehouse* and *Helvering v. Pardee* cases had not been disturbed when the testator made his will in 1937, nor when he died in 1941. Had they not been swept aside, so far as the incidence of tax liability under the federal law is concerned, the residuary trustees could not deduct from their taxable income any amounts paid to Mrs. Schwab, even though paid out of income, as contributions to a beneficiary of the trust, nor would she be liable for any taxes on her annuity. The annuity here, as in the *Pardee* case, is payable at all events. The executors in the instant case recognized this, for they paid the taxes assessed against Mrs. Schwab's $20,000 a year until the law was amended.

Appellant maintains that her husband's will was drawn in the light of existing tax laws and thus of itself clearly shows his intention that she receive $20,000 a year free of any income tax burden. We agree with her statement that the voluminous will was carefully prepared by skilled draftsmen. She calls attention to certain language of paragraph 5 of Article Nine, which is copied almost verbatim from the federal tax law. We agree that the clause to which she refers was designed to insure that the gift to the foundation would be deductible for federal estate tax purposes and that income from and gifts to the foundation would be free from federal income and gift taxes. She says that the annuity to her was to be a charge on the corpus of the trust, thus insuring, as the law then existed, that she would not be liable for any federal income taxes on account of any payments made to her under the will, and that the testator made no such provision for his sister or brother. In fact, the will

244

provides that if on any income payment date the income should not be sufficient to pay the widow's annuity, then the sister and brother should get nothing. There is a further provision that no past deficiencies should be made up to the sister or brother out of future income. Appellant states that bearing in mind the tax law that existed when the will was made, it was plain that the testator could not possibly have more clearly directed that she was to receive $20,000 a year as a net sum and that the legal effect of what he said was: "I want my wife to have an annuity of $20,000 a year, payable first out of income, and if the income isn't enough, then out of the corpus. I understand that the trustees will have to pay the tax on this annuity and that my wife won't and that's the way I want it. As far as Lottie and Jerome are concerned, I'd like them to have $6,000 a year apiece but only if there's enough income available, and in any case they ought to pay their own taxes."

Mrs. Schwab insists that even if her husband's will did not on its face show his intention to give her an annuity free of any liability for income taxes, the antenuptial agreement and other surrounding circumstances indicate beyond doubt that she was to have $20,000 a year as a net sum. She notes that the agreement uses the words "give and bequeath" or similar words in connection with the $20,000 annuity at least ten times, and says it is unthinkable that he did not intend to comply with the agreement when he made his will the next day, and that he did so when he made the will. She observes that paragraph 7 of the antenuptial agreement contemplates that she "shall be entitled to" all of her statutory rights in his estate if any court should hold the bequest invalid or ineffective to yield to her $20,000 a year, and that to take advantage of this provision she is not required to make any demand for the rights thus conferred on her; that her

husband was so concerned that nothing should interfere with her annuity that the agreement went on to provide that any acceptance by her of any benefits under his will should not estop, preclude or prevent her from asserting the rights conferred upon her; that it is almost as though he had anticipated the situation that has arisen and made provision accordingly; and that bearing in mind the income tax law as it then existed the agreement could not more clearly have stated his solemn commitment to give and bequeath to her a tax-free annuity of $20,000. Calling attention to other expenditures during their married life, she states that they spent a minimum of $13,500 a year, not including the costs incident to their travels, the expense of maintaining their automobiles and their normal household expenses, and that when the latter expenditures are added one may infer that it cost them a "minimum of $20,000 to $25,000 a year to live" over and above taxes; that this was the standard of living to which they were accustomed; that when the agreement was executed his net worth was about $1,375,065; that it is beyond the realm of possibility that one who managed a fortune of that size would be unaware of the impact of federal taxes and the dangers of inflation; that all these circumstances considered, render incredible any assumption other than an intent on his part that she should have $20,000 tax-free; that her separate income after taxes even in 1942, the year after he died, amounted to only $5,400; that such income, added to $20,000 a year tax-free, would give her an aggregate spendable income of only very little, if any, more than would be necessary for her to maintain herself in accordance with the standard of living to which she has been accustomed; that allowing for the inflationary trends which always accompany war and which Mr. Schwab must have anticipated at least in part, deducting fed-

eral income tax from the $20,000 annuity, there would be a net effective spendable income available to her far less in amount than would be required to enable her to live as she was accustomed during the years of her marriage; and that it is improbable that he intended such a state of affairs to arise.

We are of the opinion that the purpose of inserting the ''charge on corpus'' provision in the will was not to make the bequest to Mrs. Schwab tax-free for the rest of her life. We have noted that the will was carefully prepared by a skilled draftsman. We cannot believe that such a draftsman would attempt to accomplish such an important objective as making the annuity tax-free in this manner. He knew or should have known that the rule in the *Whitehouse* case could be changed at any time by Congress and he would have said in so many words that Mrs. Schwab's bequest shall be tax-free in her hands during her lifetime. As we see it, the antenuptial agreement envisioned the possibility of changes in the statutory law and provided under certain conditions that a spouse should not, by virtue of a marriage, acquire any rights as a surviving spouse, heir at law or distributee, either under the common law or any present or future statutory law in or to the present or future property of the other. We think there is merit in the suggestion of appellees as to the purpose of the ''charge on corpus'' provision. At the time of their marriage Mr. Schwab was 20 years older than Mrs. Schwab. He had been married before and had a son by a prior marriage. It was unlikely that he would have children by Mrs. Schwab. His life expectancy was short. He knew she would be his wife for a comparatively brief period. They were married three years and three months at the time of his death. Compared to his property, her possessions were insignificant in 1937. Without an agreement limiting her rights, she could

247

have claimed one-third of his property or in excess of $500,000 if she survived him as his widow. It is manifest that he was not willing that she should take so much. He was primarily interested in charity receiving the bulk of his fortune. As a condition precedent to marriage, therefore, he insisted upon the antenuptial agreement, which provided that if he bequeathed her $20,000 a year for life she would have to accept such bequest in lieu of her statutory rights. This bequest Mrs. Schwab has valued at $212,480 in her claim that the $20,000 a year is a partially taxable annuity. This is less than one-half of the value of what would be her statutory share. Had the will provided that her bequest was payable out of income only, she could have contended that she was not obligated to accept such bequest because the income might prove insufficient to pay her $20,000 a year for life and that therefore she was entitled to her statutory share. In order to make it certain that Mrs. Schwab would have to accept the bequest and forego her claim to a third of his estate, he made the bequest a charge on corpus if the income proved to be insufficient.

 Paragraph 3 of Article One of the will reads: "I hereby authorize and direct the Executors, or the Trustees of the residuary trust hereinafter created, to pay out of my general residuary estate all estate, inheritance, transfer and succession taxes, and all other taxes and duties, charges and impositions, of any kind or nature (except income taxes, if any), which may be levied or imposed upon, or with respect to, the right or privilege of transmitting or succeeding to the devises, legacies, bequests and gifts made, bequeathed or given by me in this Will."

We agree with the foundation trustees that this paragraph constitutes a prohibition against payment by

248

the executors or residuary trustees of income taxes imposed upon her $20,000 annuity. Appellant says that at the time the will became effective this paragraph could not have been directed at her annuity; that it had no application to it then; that this was recognized by the executors of the will, who are the same persons as the residuary trustees, because they in fact paid the taxes on the $20,000 until December 31, 1941; that the paragraph is no more applicable to her annuity today than it was when the will was made; that it might have been designed to prevent the residuary trustees from paying any income tax which might be assessed against Mrs. Foreman's or Jerome Schwab's $6,000 a year; that it must not be overlooked that the provision is specifically applicable only to the possible imposition of income taxes imposed upon the right or privilege of transmitting or succeeding to bequests; that she is not concerned with a gross income tax or any other kind of an income tax which might be regarded as imposed upon the right of transmitting or succeeding to property; and that she is concerned with a tax on income.

██ Paragraph 3 of Article One of the will looks to the future as well as the present. The testator is presumed to have known that the law might be changed at any time in the future so as to impose a tax on Mrs. Schwab. The fact that the executors paid income taxes assessed against them as executors is immaterial, as the prohibition against the payment of income taxes relates to the payment of such taxes assessed against someone other than the executors or trustees. The testator could not effectively provide in his will that the executors should not pay income taxes which Congress ordained should be assessed against and paid by them. It is immaterial whether the $20,000 a year given to the widow be called an annuity or a bequest. The will and the antenuptial agreement speak of it as

a bequest. At the time of the making of the agreement and the will Mr. Schwab knew that under the federal income tax laws then in force Mrs. Schwab would not be required to pay an income tax on such annuity. He also knew that Congress might amend the law so as to require her to pay an income tax on her annuity. Although the will was carefully drafted and looked to the future, there was no provision for the eventuality of a change in the income tax law. In fact, a careful reading of the agreement and the will indicates that he did not so intend. When the testator, by paragraph 3 of Article One of the will, prohibited the payment of income taxes which may be levied or imposed upon, or with respect to the bequests ''bequeathed'' by him, he intended to express his intention that neither the executors nor the residuary trustees should pay any income taxes then or thereafter assessed against any beneficiary, including Mrs. Schwab. She points out that her husband was well aware of the danger of inflation. He did not provide that her annuity should increase as the purchasing power of the dollar decreased. He was also aware of the impact of federal taxes, but did nothing in his will to protect her in case the tax law should be changed so as to impose a greater burden upon her.

 We agree with the contention of appellees that whether considered alone or in connection with surrounding circumstances, the will fails to provide for the payment of any income taxes assessed against Mrs. Schwab and contains provisions which necessarily prohibit the residuary trustees from paying any such taxes. Paragraph 3 of Article One of the will authorizes the executors or trustees of the residuary trust to pay all taxes of any kind or nature which may be imposed upon or with respect to the bequests provided for in the will, but income taxes are expressly excepted from such authorization. Although paragraph 1 (b)

of Article Five authorizes the trustees of the residuary trust to pay all taxes of every kind and nature which may at any time or from time to time be payable by the residuary trustees, or be levied or assessed, or constitute a claim or lien upon the residuary trust, such fiduciaries are not authorized by that paragraph to pay any taxes assessed against any third person or any beneficiary under the will. Under the rule, *expressio unius est exclusio alterius,* authority to pay federal income taxes assessed against the widow, must be denied. Mrs. Schwab states that no one could reasonably contend that her claim that the residuary trustees should pay the income tax on her annuity does not "constitute a claim against" the residuary trust. In our opinion her claim is not such a claim as the residuary trustees would be justified in paying out of trust funds. By simply asserting a claim against the residuary trust, she cannot confer power or impose an obligation upon the residuary trustees to turn trust funds over to her. Appellees say that if the language of paragraph 1 (b) of Article Five of the will could be construed so as to give the residuary trustees discretionary power to bear the widow's income taxes, the fact remains that they have not seen fit to exercise such discretion in her favor.

Although paragraph 8 of Article Four of the will directs the residuary trustees to encroach upon corpus for the purpose of paying any deficiency in Mrs. Schwab's $20,000 annuity if the income does not equal $20,000, the will does not direct or authorize the residuary trustees to encroach upon corpus for the purpose of paying any of her income taxes. Paragraph 12 of Article Four provides that all the net income in the hands of the residuary trustees on the 16th day of January in each year, after making the payments required to be made by paragraphs 4, 5, 6 and 7 of Article Four, shall forthwith be paid over

251

and distributed to the foundation trustees, and that such net income so paid over and distributed shall become and be a part of the foundation. In the events that occurred the only payments required to be made under the paragraphs mentioned are the $20,000 per year to Mrs. Schwab for her lifetime, and the $6,000 per year to decedent's sister, Mrs. Foreman, for her life. Mrs. Foreman died January 23, 1951. There is no provision in the will authorizing any deductions from the net income required to be paid over annually to the foundation trustees of any sum for the payment of income taxes assessed against Mrs. Schwab, nor is there any provision authorizing any deductions from corpus and undistributed net income thus required to be paid over to the foundation trustees upon the termination of the residuary trust of any sum for the payment of federal income taxes assessed against Mrs. Schwab.

The will and the codicils provide for numerous contingencies and details. It is significant that the testator omitted any provision that the residuary trustees should pay Mrs. Schwab's income taxes on her annuity, and did not set forth the mechanics by the which the additional amounts should be determined and paid. Suggested problems that would be likely to arise should appellant's views prevail are: To what extent are the residuary trustees to be permitted to participate in, or control, the preparation and filing of Mrs. Schwab's income tax returns so as to assure them that all allowable deductions, exemptions and credits shall be taken advantage of, and that her taxable income shall not be overstated? Will the additional amounts become payable when Mrs. Schwab makes her payments under the ''pay as you go'' plan, or will they become payable after the close of the taxable year in question? Are Mrs. Schwab's deductions, exemptions and credits to be applied against her in-

come other than the $20,000 annuity, or against the $20,000 annuity, or against both, and if against both, in what proportion? Suppose Mrs. Schwab's income other than the $20,000 annuity continues to increase, thus taking her total income into higher and higher brackets? Suppose Illinois, or the City of Chicago, or some other political subdivision should pass an income tax law or other tax law which would require her to pay substantial amounts on account of her $20,000 annuity, could she call upon the residuary trustees for help? Suppose Mrs. Schwab moved to New York or California, or some other state that would tax her $20,000 annuity? These and other questions emphasize the significance of the absence in the will of the provisions one would naturally expect to find there had the testator intended to give her a $20,000 annuity "tax-free." Under the will she is to receive the fixed sum of $20,000 per year for life. According to her theory the amount payable is not a fixed sum, but would vary from year to year depending upon a variety of circumstances, such as the tax rate, her residence, her marital status, her other income, her dependents, her contributions to charity, etc. Thus, to a certain degree she would be in a position to determine for herself from year to year how much she was to receive from the residuary trustees. We are convinced that the will, which provides for the payment to her of a fixed annual sum, is not susceptible to any such construction.

██ Mrs. Schwab states, and we agree, that equity is not so wanting in vigor or ingenuity that a mere mathematical problem will deter it from entering a decree which will carry out what it finds to be the testator's intent, and cites cases where relief has been granted despite mathematical problems. She says there is no doubt that any tax payments on the $20,000 a year made by the trustees either to the

Federal Government or by way of reimbursement to her will be additional taxable income to her; that if the trustees should in 1951 pay or reimburse her for $8,000 in taxes assessed against her on account of the inclusion of the $20,000 a year in her 1950 net income, then in granting the relief the court must determine whether in 1952 the residuary trustees should pay or reimburse her for the portion of her 1951 income tax attributable to the inclusion of $28,000 (the annuity plus the 1950 tax) in her 1950 income, or whether the limit of the trustees' liability shall be to pay or reimburse her for federal income taxes on $20,000 only, without regard for the "tax on the tax." To assist the court Mrs. Schwab suggests four possible solutions to the problem. Under the first suggested method, which she deems most appropriate, the residuary trustees for the year 1949 would, in addition to the $20,000 annuity, pay or reimburse her in the sum of $9,706.03 exclusive of "tax on tax" and in the sum of $24,353.76 including "tax on tax." Under the second proposed method for the same year they would pay or reimburse her the sum of $6,088.96, under the third method for the same year the sum of $6,322.16, and under the fourth method $7,926.76. Mrs. Schwab's position is that as the federal tax laws stood at the time of the making of the will and her husband's death, she did not have to include her $20,000 annuity in her taxable income and that this circumstance establishes the intention of her husband that she was to have a tax-free annuity. Logically, this would mean that if the tax laws were changed so as to require her to include this $20,000 annuity in her taxable income, the residuary trustees would have to pay her sufficient additional amounts to place her in the same position as she would be in if she were not required to include the amount of the annuity in her taxable income. Anything less would not be based upon the intention of the testator.

254

Her theory, logically applied, would require the residuary trustees, in view of her other income and the high tax rates, to pay her very large sums of money. Appellees, commenting on the fact that Mrs. Schwab indicates a willingness to take substantially less than the amount to which would be logically entitled if she is right in her contention, assert that her willingness to recede from the logic of her position proves that it is fundamentally unsound. We agree with the view of appellees that it is incredible that decedent would leave a will "carefully prepared by a skilled draftsman" and "executed in the light of then existing federal tax laws" under which he would intend to leave Mrs. Schwab a tax-free annuity and yet fail to set forth the mechanics by which the additional amounts to be paid to her should be determined, knowing that such failure would necessitate expensive litigation and perhaps result in a frustration of his intent in whole or in part.

Mrs. Schwab maintains that the change in the income tax law should not be permitted to defeat her husband's primary purpose. She states that the impact of the amendment on her situation is apparent, for at all times since her husband's death the income from the residuary trust has been more than sufficient to pay her $20,000 a year and that she has thus become liable for a tax which was formerly borne by the residuary trustees. We cannot agree with her that the primary purpose of her husband was that she was to receive a $20,000 annuity tax-free. We are convinced that Mr. Schwab was primarily interested in charity receiving the bulk of his fortune. He insisted upon the antenuptial agreement which would bequeath her an annuity of $20,000 a year for life, which she agreed to accept in lieu of her statutory rights. This bequest was less that one-half of the value of her statutory share. The parties do not cite and we have

been unable to find any Illinois cases on the question presented. In *Old Colony Trust Co. v. Williams,* 320 Mass. 110, 68 N. E. (2d) 4, the testator, who died shortly after the amendment to the federal income tax law, left an annuity to his son. The trustees were given discretion to pay any and all taxes which may be imposed upon the income of the trust estate. The will provided, "From the income collected from the trust property, or from the principal if they deem best, the trustees may pay any and all taxes which may be imposed upon the principal or income of the trust estate." The trustees asked the probate court whether it was within their discretionary authority to pay from the trust income or principal the federal income taxes assessed with respect to the net income of the trust included within the annual payments from the trust to the annuitant, and that court answered in the affirmative. A remainderman appealed to the Supreme Court, which sustained the construction placed on the will by the probate court. Mrs. Schwab asserts that the *Williams* case is applicable to sec. 1 (b) of Article Five of the will, which gives the residuary trustees discretion to pay and discharge all taxes of every kind and nature which may at any time be payable by the trustees, or levied or assessed or constitute a claim against the residuary trust. We have heretofore pointed out that federal income taxes assessed against Mrs. Schwab constitute her personal obligation and do not constitute a claim against the residuary trust, that the Federal Government could not collect such taxes from the residuary trust, and that she does not have a valid claim such as the residuary trustees would be justified in paying out of trust funds. We do not believe that the *Williams* case is applicable to the facts of the instant case.

Mrs. Schwab also places reliance on *Commercial Trust Co. of New Jersey v. Kohl,* 140 N. J. Eq. 294,

54 A. (2d) 473, which was an application by the executors and trustees of the will of Henry Kohl for a further construction thereof and for additional instructions. A better understanding of the case may be obtained by reading a prior case involving a construction of the same will reported in 131 N. J. Eq. 233, 24 A. (2d) 809. There the vice chancellor said that the chief concern of the testator was his family and that he intended that "they shall occupy no mean or secondary position to the institutional and other legatees and to possible issue of his minor daughter," and that he did not intend to limit the widow's annual payments "to the ever present uncertainty of income." The chancellor said that the testator wanted his widow to have ample funds to maintain her accustomed style of living, not merely the $75,000 annuity from his estate, but in addition the surplus yearly income under certain circumstances, and pointed out that the testator "directed that his estate should absorb 'all inheritance and/or other taxes imposed upon . . . trust funds, legacies, gifts and/or devises' set up or given in the will to his stepmother, Catherine Kohl, his wife and daughter, or the issue of the daughter, at the same time requiring his executors to deduct from all other gifts, the proper tax or part thereof allocatable thereto." In this case (the first case) the complainants asked the court whether the yearly payments provided for in the will for the wife, daughter and issue of the daughter, if any, were payable at all events out of income if sufficient and if not sufficient, out of corpus, or whether the prescribed payments were limited to net income; and in the event it should be determined that such payments were limited to net income, whether the income tax thereon should be paid by the fiduciaries or the recipients of such income. The court found that the primary and dominant intention of the testator was the care, protection and comfort of his loved

ones, and concluded that the payments required to be made under the will were annuities payable at all events, regardless of the sufficiency or insufficiency of the income and that they constituted a charge upon the whole estate. This conclusion made it unnecessary for the court to decide whether the income tax thereon would have been payable by the fiduciaries. The opinion in the first case was filed March 2, 1942, prior to the change in the income tax law.

In the latter *Kohl* case the court was asked to construe the will and instruct petitioners as to whether they were required to pay testator's wife, daughter and any issue of his daughter the amounts by which the income taxes have been or may have been increased by the reason of the inclusion in their taxable incomes of amounts received and to be received by them; that should the court determine that the will of Henry Kohl does not require them to pay the amounts mentioned, that they be instructed as to whether they should deviate from the terms of the will and pay the amounts by which the income taxes have or may be increased, and that the court determine whether such payments should be charged to the corpus of the trust or the income thereof. The chancellor said that the answers to the problems posed are to be found in the will of the testator and the decree entered in the prior proceedings. In the second case the court believed that the previous decree found that the payments of $75,000 a year to the widow are annuities fixed and payable absolutely in all events regardless of the sufficiency or insufficiency of income, and said (303):

"It should be noted that the decree does not provide any more than does the will, that the fiduciaries shall only pay the income tax on income assessed against the estate or trust. It imposes upon the fiduciaries the obligation to pay such income tax as is 'chargeable against income,' meaning, of course, all income of the

258

estate or trust regardless of who receives it in whole or in part or where by law the impact of tax liability may fall.''

The court held that the change in the income tax law by the Amendment of October 21, 1942, cannot defeat the rights of beneficiaries arising upon the death of their benefactor; that the Amendment may require a change in the method by which the purpose of the testator shall be carried out, but it cannot alter or defeat that purpose, and said (304):

''The intent of the testator is clear. His entire residuary estate and trust is devoted and dedicated to his wife and daughter to the end that their benefactions may be at all events received without diminution and tax free as well; whatever may be left, if anything, upon the death of the survivor of his wife and daughter is to pass to the issue of the daughter, if any, and if none, then to the corporate beneficiaries.''

The court also held that the gift of excess income was intended to be as tax-free as the fixed annuities; that the testator provided for a contingency or change in the initial impact of income tax liability; that he made an overall provision that no matter what the contingency or change, his benefactions to his loved ones were to be tax-free, including income taxes; and that ''the testator wanted the benefactions to his loved ones to be tax-free,'' which was ''his major objective.''

In the *Kohl* case the court held that the primary and dominant intention of the testator was the care, protection and comfort of his loved ones. In the instant case the dominant intention of the testator was to preserve the bulk of his estate for charity. We conclude that the *Kohl* opinions do not support the contentions of Mrs. Schwab.

In *Holcombe v. Ginn*, 296 Mass. 415, 6 N. E. (2d) 351, the testator died in 1914 leaving an estate of more than

two million dollars. By his will he gave his widow a life estate in the homestead and a $25,000 annuity. In 1915 the widow and beneficiaries entered into an agreement that she would not renounce the will in consideration of certain annual payments to her in addition to those required by the will. By 1937 the widow began to feel the effect of the federal income taxes and took the position that a special method of accounting should be adopted in dealing with her which would result in no additional burden falling upon her in consequence of the federal taxes. In denying her contention, the court said (418): "Taxes subsequently imposed and not anticipated or provided for in the agreement 'must fall where for public reasons the sovereign power of the government has seen fit to place them.' " We are of the opinion that the following cases, cited by appellees, support their contentions: *Rogers v. English,* 130 Conn. 332, 33 A. (2d) 540; *Toretta v. Wilmington Trust Co.* (1947 D. C. Del.) 71 F. Supp. 281; *In Re Milleg's Will,* 196 Misc. 761, 92 N. Y. S. (2d) 601; *Sneed v. Pool* (1950 Tex. Civ. App.), 228 S. W. (2d) 913; *Board of Trustees v. First Citizens Bank and Trust Co.,* 230 N. C. 264, 52 S. E. (2d) 805; *Clark v. Mississippi Valley Trust Co.,* 357 Mo. 785, 211 S. W. (2d) 10; *Union Savings Bank & Trust Co. v. Alter,* 103 Ohio 188, 132 N. E. 834; *In Re Nevil's Estate,* 367 Pa. 30, 79 A. (2d) 415 (certiorari denied 96 L. Ed. 51).

██ Mrs. Schwab states that if the will, construed in the light of the antenuptial agreement and the other surrounding circumstances, did not require payment of her annuity free of taxes, the court should order the residuary trustees to deviate from the terms of the trust to carry out her husband's paramount intention of giving her $20,000 a year as a net sum. The cases cited in support of this proposition, *Curtiss v. Brown,* 29 Ill. 201; *In the Matter of Pulitzer's Will,* 249 N. Y. Supp. 87; and *Pennington v. Metropolitan Museum of*

*Art,* 65 N. J. Eq. 11, 55 Atl. 468, are all cases of deviation from administrative provisions of trusts such as powers of sale or investments where deviation benefits all the beneficiaries. These cases are not precedents for deviation from distributive provisions of wills or trusts where the effect of deviation would be to take from one beneficiary and give to another, as in the case at bar. She also cites a monograph by Daniel Stewart Wentworth, Esq., entitled Deviation From the Terms of the Trust, in which the leading authorities on the subject of deviation are collected and discussed. In chapter VII the article states that courts rarely, if ever, deviate from the terms of a will or trust where the effect would be to take from one beneficiary and give to another. We are of the opinion that Mrs. Schwab does not present a case where the court would be warranted in directing the trustees to deviate from the terms of the trust.

For the reasons stated the decree entered by the chancellor of the circuit court of Cook county is affirmed.

*Decree affirmed.*

FRIEND, J. and NIEMEYER, J., concur.