(No. 29685.—

EUNICE E. STOUGH, Appellant, *vs.* FRANK V. BRACH *et al.*
—(FRANK V. BRACH, Appellee.)

*Opinion filed November 20, 1946—Rehearing denied Jan. 20, 1947.*

SCHUYLER & HENNESSY, and HOMER F. CAREY, both of Chicago, for appellant.

RYAN, CONDON & LIVINGSTON, (JOHN J. SHARON, of counsel,) both of Chicago, for appellee.

Mr. JUSTICE FULTON delivered the opinion of the court:

A freehold being involved, this is a direct appeal by the plaintiff-appellant from a decree of the superior court

of Cook county dismissing for want of equity count III of her amended complaint and from an order previously entered granting the defendant's motion to strike counts I and II of the amended complaint.

The appellant and appellee were formerly husband and wife and at the time of their separation, in 1931, a property settlement involving a trust agreement was entered into by them. Under this agreement the income from approximately $1,000,000 of personal property, together with the use of valuable residential real estate at 175 Sheridan Road, Winnetka, Illinois, known as the "Homestead Estate," was given appellant. She was given the right to reside in the real estate and during her occupancy was required to pay all taxes levied and assessed against the premises and to pay one half of any special taxes and assessments. Likewise she was to pay all of the expenses of operation of said premises and was to keep the same in repair. This agreement provided that in the event appellant should elect not to reside in the residence and should give written notice to the trustee and appellee, Brach, of such intention, Brach was to have the right to obtain a reconveyance of the real property from the trustee upon depositing with the trustee the sum of $75,000, which was to be paid over by the trustee to appellant. In the event Brach did not elect to obtain a reconveyance by payment of the $75,000, the trustee was to sell the real property and divide equally between appellant and Brach the proceeds of such sale, the trust agreement also providing "that no sale of said Homestead Estate shall be made during the joint lives of the parties hereto for less than One Hundred Fifty Thousand Dollars ($150,000) without obtaining the written consent of the parties hereto, and provided, always, that said party of the second part [appellant] shall be entitled to receive one-half of the net proceeds of any sale of said Homestead Estate made by said Trustee, but in no event less than Seventy Five Thousand

Dollars ($75,000.)" The agreement also provided that in the event Brach predeceased appellant, the property was to be conveyed to her, and if appellant predeceased Brach, the property was to be conveyed to him.

On June 26, 1941, by an agreement of the parties amending the trust agreement, all of the property in the trust, with the exception of the "Homestead Estate" and its furnishings, were withdrawn from the trust and distributed to appellant and Brach. Appellant received in excess of $750,000 in cash and securities. At this same time appellant and Brach executed written instructions to the trustee regarding distribution of the personal property and the retention of the "Homestead Estate" in the trust, containing the following provision: "With respect to the 'Homestead Estate' and the 'Homestead Personal Property,' said trust shall remain in full force and effect and the said Eunice Essig Brach hereby for herself, her heirs, executors, administrators, and assigns, agrees to pay all taxes, assessments, and other charges incident to the ownership of said property and keep the buildings, comprising the 'Homestead Estate,' insured against fire in an amount not less than Fifty Thousand Dollars ($50,000) and to keep the 'Homestead Personal Property' insured against fire in an amount not less than Twenty Thousand Dollars ($20,000.)"

Subsequent to the distribution of the personal property in the trust, appellant gave notice of her intention to remove from the "Homestead Estate," and on November 12, 1942, appellant moved therefrom. Brach did not exercise his right to obtain the conveyance of said property by payment of $75,000, whereupon appellant requested the trustee to sell the same. The property could not be sold for any amount near $150,000. Brach refused to consent in writing to the sale of the property for any smaller amount, and appellant brought this suit to compel the sale thereof and obtain the first $75,000 of the proceeds thereof. By

count I of the complaint she seeks to compel the sale of this property without the written consent of Brach on the theory that the sale of the property is necessary to prevent the destruction of the trust *res*. In this count she described the property and alleged that in 1931, at the time of the original agreement, the "Homestead Estate" had a cash market value in excess of $200,000, but that at this time, due to economic conditions, the property is worth only about $85,000. She further alleged that the cost of maintenance amounts to $6000 per year, in addition to the taxes which exceed $1700 per year. She further alleged that the taxes for the year 1942 were in default and that it was impossible to rent the property for an amount which would be sufficient to pay the taxes thereon and provide for the necessary maintenance thereof. She alleged that if the "Homestead Estate" were not sold within the near future it would be entirely lost to both the plaintiff and the defendant.

Count II of the amended complaint adopted, by reference, the allegations of count I and was predicated on the theory that by the execution of the supplemental agreement of June 27, 1941, appellant became vested with the full beneficial interest in the "Homestead Estate," subject only to the right of Brach to acquire it for $75,000 at such time as appellant might no longer care to reside therein. In this count she further alleged that inasmuch as she agreed to pay the taxes and assessments against the property by the supplemental agreement of 1941, and since Brach was relieved of any responsibility whatsoever in connection with the same, it was the intention of the parties that she was, in fact, the beneficial owner thereof and could sell the same free from any rights of Brach therein.

Count III adopted, by reference, the paragraphs of count I and further alleged that Brach was estopped to hold up the sale because he had made statements to appel-

lant that he desired the property sold for the best price, obtainable, that he would consent to the sale at less than $150,000 and that he urged appellant to move out of the property, buy herself a smaller house, and list the property for sale. Based upon these representations, appellant alleged she had purchased a new home of her own for $60,000 and had moved out of the house, both of which she would not have done if she had not believed Brach would abide by his representations.

The appellee filed his motion to strike the amended complaint. This motion was sustained as to counts I and II thereof and denied as to count III. He answered count III denying that he had made any representations to the appellant and denying that the appellant was entitled to any relief.

The First National Bank of Chicago filed its answer and counterclaim by which it denied that the plaintiff was entitled to any relief as against it, and asserted that as long as it continued as trustee it would comply with the instructions of the court with reference to the leasing, sale, or disposition of the property. By its counterclaim the trustee asked that it be permitted to resign as trustee and that it might be relieved and released from any further liability or responsibility as trustee. Both appellant and appellee answered the counterclaim of the trustee and denied that it should be permitted to resign as trustee.

The court referred the matters contained in count III to a master in chancery who, after hearing proofs, found that the appellant had failed to prove a waiver on the part of Brach of the condition that no sale should be made for less than $150,000 and the plaintiff receive $75,000 thereof without his written consent. This finding was approved by the chancellor and a decree was entered dismissing the amended complaint for want of equity but retaining jurisdiction for other purposes. From this decree the plaintiff appealed. Appellant contends that the court

erred in striking counts I and II of the complaint and that the decree as to count III is contrary to the manifest weight of the evidence.

In considering the propriety of the chancellor's action in striking counts I and II we can consider that Brach admitted the facts well pleaded in those counts. (*Scully* v. *Hallihan*, 365 Ill. 185.) From a study of the allegations contained in count I, it appears that the "Homestead Estate" was placed in the trust solely to provide appellant with a home and not to provide her with income or support. It appears from the record that when a distribution of the personal property of the trust was made, appellant expressly agreed to pay the taxes on the "Homestead Estate" in view of the fact that it was understood by the parties that the "Homestead Estate" did not of itself produce any income. There is no allegation in the complaint that appellant did not possess ample funds to carry out this obligation and it is apparent that she is in a position to pay such taxes if she so desired. The sole basis upon which a court of equity could take jurisdiction in this case and order a sale of the property would be that economic conditions had so altered the value of the premises since the original trust agreement was executed that the property would be lost and the trust destroyed.

In the early case of *Curtiss* v. *Brown*, 29 Ill. 201, this court ruled that property could be sold contrary to the terms of a trust where the trust estate could not be preserved and would be lost but for such sale. A careful reading of all the cases cited by appellant does not disclose a broadening of this rule. (*Voris* v. *Sloan*, 68 Ill. 588; *Hale* v. *Hale*, 146 Ill. 227; *Gavin* v. *Curtin*, 171 Ill. 640.) It has been consistently held by this court that only in extreme cases will a court of chancery break in upon the terms of a trust and that the power to do so should be exercised with great caution.

All of the cases may be distinguished from the present case because, in the case at bar, there is no showing that the appellant is unable to pay the taxes on the property and there is no urgency or extreme necessity shown. There is no showing that the property will be totally lost to appellant and appellee if appellant complies with her obligation to pay the taxes and keep the same in repair. If economic conditions have changed to such an extent as to require that a new contract be made between the parties by ordering a sale of the property without Brach's consent, the new contract could very equitably provide that appellant should receive less than the $75,000 as provided in the original trust. The intention of the parties as evidenced by the original agreement was that the property was worth more than $150,000, and would, in any event, sell for near that amount. If economic conditions have so changed as to warrant a court of equity requiring a sale without Brach's consent, logic and equity would require a change in the distribution of the proceeds of the sale. The complaint contains no offer to do equity and since there is no allegation that appellant is unable to pay the taxes or keep the same in repair, the court properly struck count I of the complaint.

Appellant makes the same argument to the propriety of striking count II as she made to the propriety of striking count I. The allegations of count II do not set forth a cause of action, and they do not show any reason for granting appellant the relief sought.

As to appellant's contention that the appellee, Brach, is estopped from refusing to approve the sale of the "Homestead Estate," for less than $150,000, we do not feel that where the evidence was heard by the master and his findings were approved by the chancellor, we are justified in disturbing the decree unless it is manifestly against the weight of the evidence. (*Mruk* v. *Mruk,* 379 Ill. 394.) A careful review of the evidence in this case fails to dis-

close either a waiver by Brach of his right to insist on the sale of the property in accordance with the terms of the trust, or conduct by him which would clearly estop him from insisting upon such a sale being conducted in accordance with the terms of the trust. The decree, in our opinion, is not manifestly against the weight of the evidence. Where the terms of a written instrument are to be varied by oral agreements or conduct constituting estoppel, the proof thereof should be clear and convincing. In the case at bar, it is our opinion that the master and the chancellor properly ruled on the weight of the testimony.

The controversy between appellant and appellee is quite spirited and there is some ill feeling manifested by both parties with reference to the other. Both appear to be persons of considerable means. Appellant has been represented by competent legal counsel throughout this proceeding and in her prior dealings with her husband. She and her counsel certainly have understood the full import of all transactions had with appellee. Any decree of the court directing the sale of the property without appellee's consent would be, in fact, making a new contract between the parties. Appellant has shown no fraud, misrepresentation, or other reason for reforming the trust agreement, and she has not shown by any clear and convincing evidence a waiver by Brach of his right to insist upon her complying with the terms of the trust agreement. It is the opinion of this court that the decree of the superior court of Cook county dismissing count III and the order of that court striking counts I and II of the complaint should be, and the same are, hereby affirmed.

*Decree and order affirmed.*