18 Ill. App.2d 163 (1958)
151 N.E.2d 398
Marion Thorne, Appellee,
v.
Continental National Bank and Trust Company of Chicago, as Trustee, etc., Appellant.
Gen. No. 47,322.
Illinois Appellate Court  First District, Second Division.
June 17, 1958.
Released for publication July 15, 1958.
*164 Mayer, Friedlich, Spiess, Tierney, Brown & Platt, of Chicago (Frank D. Mayer, and Louis A. Kohn, of counsel), for defendant-appellant.
Kirkland, Fleming, Green, Martin & Ellis, of Chicago (Bartlett S. Marimon, and Georges Dapples, of counsel), for plaintiff-appellee.
*165 JUSTICE MURPHY delivered the opinion of the court.
This is an appeal by the defendant-trustee Bank, from a decree directing it to invade the corpus of trust estates for the purpose of effectuating a settlement agreement terminating litigation between the sole life tenant-remainderman and claimants to part of the remainder.
Montgomery Ward Thorne, a resident of Chicago, was the son of Gordon C. Thorne, now deceased, and Marion Thorne, plaintiff herein. On June 19, 1954, he was found dead under unusual circumstances. He was twenty years of age and left surviving plaintiff, his mother, as his only heir at law.
Montgomery Thorne had been engaged to Maureen Ragen, who was named as executrix of a will alleged to have been executed by him on June 10, 1954. In the will, he bequeathed one-half of his estate to Maureen Ragen, one-fourth to her mother, Mrs. Aleen Ragen, one-eighth to plaintiff, his mother, and one-eighth to his maternal aunt, Carol McDougall Lind. This will was admitted to probate on August 20, 1954, in the Probate Court of Cook County, Illinois.
Montgomery Thorne, at his death, had no estate other than a vested two-thirds interest in the remainder of the corpus of two trusts, which was subject to a life interest of plaintiff, and income annuities of relatively small amounts, each of which terminated upon the death of the annuitant. It was this vested two-thirds remainder which was affected by his will of June 10, 1954.
Plaintiff sued in the Circuit Court of Cook County to set aside the June 10, 1954, will, alleging undue influence was exercised over Montgomery Thorne by Maureen Ragen and her mother. On February 6, 1956, a decree was entered finding that the will of June 10, *166 1954, was not the free and voluntary act of Montgomery Thorne, and it was set aside. The decree directed the Probate Court to expunge the order admitting it to probate.
On July 30, 1956, a settlement agreement, purporting to end the will contest litigation, was entered into by and between plaintiff, the Ragens and Carol McDougall Lind, being all the beneficiaries of the Montgomery Thorne will of June 10, 1954.
Pursuant to the settlement agreement, plaintiff filed the instant complaint in chancery on August 9, 1956, against the Bank, as trustee under the trust agreement dated February 24, 1921, executed by Katharine C. Camp and known as Trust No. 9203, and as trustee under the last will and testament of Gordon C. Thorne, deceased, and Helen T. Kehoe, Richard E. Schmidt, Grace Bloom and Carl J. Gallauer. The four last named defendants are annuitants under Trust No. 9203 and are not involved in this appeal because their annuities are not disturbed by the decree appealed from.
We are concerned only with Count I of the complaint. It was in that count that Mrs. Thorne sought the court's approval of the agreement entered into on July 30, 1956, settling the will contest suit filed by her, and to direct the Bank to pay out and distribute, from the trust corpus, cash and shares of stock, to effectuate the settlement. The Bank answered, denying that plaintiff was entitled to the relief sought, and alleged that to permit the invasion of the corpus requested would defeat the provisions of the will of Gordon Thorne, deceased, and would be in derogation of a decree construing that will, entered in the Circuit Court of Cook County on February 3, 1939, in Case No. 38 C 8766.
It was on Count I, and the answer filed thereto, that the decree of July 8, 1957, was entered, approving the *167 settlement agreement of July 30, 1956, and authorizing and directing the invasion of the corpus of the trusts for funds to carry out the terms of the settlement agreement.
The decree was based on testimony heard by the chancellor and made many findings, among which are: that on the date of its entry, the value of the principal of the corpus of the Katharine C. Camp Trust No. 9203 and the Gordon C. Thorne testamentary trust was approximately $2,208,670.94; that the estate of Montgomery Thorne consisted of a vested remainder in two-thirds of the corpus of these two trusts, and had a value of approximately $1,472,447.28; that the settlement agreement payments and the Illinois inheritance tax, with interest, aggregated $680,701.72, leaving approximately $1,527,969.22 as the corpus of both trusts, which would be subject to an estimated Federal estate tax of $222,258.37 with interest; that after due payment and allowance of the aforementioned sums, a sufficient amount of corpus would remain in the two trusts to provide properly for the annuitants under Trust No. 9203 and for Marion Thorne, the life tenant, and Carol McDougall Lind, and in accordance with the settlement agreement.
The decree found that in the prosecution of this acrimonious litigation vast legal expenses had been incurred for attorneys' fees and costs; that the continuation of the will contest proceedings would deplete the estate of Montgomery Thorne to a very marked degree and would do great harm to his memory and reputation; that the terms of the will contest settlement agreement are fair and equitable and should be carried into effect; that Gordon Thorne, at the time of signing his will, did not and could not have anticipated the changes in the circumstances which occurred subsequent to his death; and that such unforeseen circumstances constitute an emergency, which justified *168 the court in ordering modification of the terms of the two trusts, in order that the settlement agreement may be carried into effect.
The chancellor further found that plaintiff was cognizant of the fact that to carry out the terms of said settlement agreement would deplete the corpus of the trust estates and reduce the amount of income available for her benefit, and reduce the corpus of the trusts she would be entitled to dispose of upon her death; that the encroachments upon the corpus of the trusts remaining, after carrying into effect the settlement agreement, would not endanger the rights of the annuitants or Carol McDougall Lind; that plaintiff was sixty-one years of age on her last birthday; that upon her death, in the event the settlement agreement is carried into effect, the remaining corpus, subject to the rights of any annuitants who survive her, will pass either to her heirs at law or according to her last will and testament; and that there is no other person interested in said trust estates, except Carol McDougall Lind, who participated in the settlement agreement.
The Bank, as trustee under the Gordon C. Thorne testamentary trust and the Katharine C. Camp Trust No. 9203, was directed (1) to make specified payments and stock distributions to the Ragens, their attorneys, to other attorneys representing various parties to the litigation, including the Bank and its attorneys, funeral expenses, and Illinois inheritance taxes; (2) to pay to Carol McDougall Lind the sum of $5400 per annum out of the income from and the principal of the combined trust funds, after providing for the annuitants under the Katharine C. Camp Trust No. 9203, said payments to continue until her death or until the death of plaintiff, whichever shall first occur; (3) to pay to Marion Thorne annually the sum of $36,000 net, after Federal income and capital gains taxes, *169 using that portion of the principal of said trusts each year, if any, as may be required to provide this net sum; (4) to pay fees to plaintiff's attorneys in the sum of $150,000, with discretion to pay a deferred sum of $100,000, or any part thereof that may be made without jeopardizing the rights of any beneficiaries under said trust; (5) to pay Federal estate taxes assessed by reason of the death of Montgomery Thorne in such manner and at such time as it, in its discretion, may determine; and (6) to sell sufficient assets of said trusts (the entire corpus of which virtually consisted of shares of Class A stock of Montgomery Ward & Company) to permit payment of the cash sums required to be paid pursuant to said settlement agreement and the decree.
The decree had attached to it as "Exhibit A" an opinion rendered and filed by the chancellor under date of April 5, 1957, wherein the chancellor recites the facts leading up to the filing of the complaint, and that plaintiff had made a demand, which was refused, upon the Bank to advance the money necessary to effectuate the settlement agreement. The opinion, among other things, says:
"I am convinced that if Gordon C. Thorne, the creator of this estate, were alive, he would provide the funds necessary to terminate this unfortunate litigation. All of the funds of this estate belong to Mrs. Marion Thorne and she can dispose of all the assets of the estate by her last will and testament. She is willing to make the sacrifice of these funds in order to protect the name of her son and she ought to be permitted to do so. If this court does not order the trustee to disburse the funds, and the litigation is resumed concerning the will of June 10, 1954, then the courts of this county will be called upon to preside over long and extensive litigation....
*170 "This is an emergency that I think justifies the interposition of a court of equity. There are no cases in point covering a situation presented to the court by the facts in this case."
Gordon Thorne died January 28, 1938, leaving plaintiff and Montgomery Thorne as his heirs at law and next of kin. The Gordon Thorne will was admitted to probate in the Probate Court of Cook County, Illinois, on February 4, 1938, and in this will Gordon Thorne attempted to exercise powers of appointment given him under the provisions of three separate trust instruments executed by his mother, Katharine C. Camp in 1921, with the Continental and Commercial Trust & Savings Bank as trustee. In two of these trusts she provided that the income of the trust corpus should be paid to her son, Gordon C. Thorne, for his life, and upon his death the remainder should be delivered as he might provide in his last will. In the third trust Mrs. Camp reserved the entire net income to herself for life and, upon her death, the income, subject to certain annuities, to be paid to her son, Gordon C. Thorne, during his life and, upon his death, the remainder to be delivered as he might provide in his last will. Mrs. Camp died January 4, 1930, and thereafter Gordon C. Thorne received the income of all three trusts until his death on January 28, 1938.
The will of Gordon C. Thorne was construed by a decree of the Circuit Court of Cook County, entered on February 3, 1939, and later affirmed by this court (Thorne v. Continental Nat. Bank & Trust Co., 305 Ill. App. 222 (1940)). The disposition of the remainder interests, as provided for in the will of Gordon C. Thorne, was held invalid, as violating the rule against perpetuities, and the entire interest in the property and assets of the "Camp Trusts," upon the death of Gordon C. Thorne, was decreed to have passed to and become vested in Marion Thorne and Montgomery *171 Thorne, in the proportion of one-third thereof in Marion Thorne and two-thirds thereof in Montgomery Thorne, subject to, however, (1) the valid appointment of life interests; (2) the power of the trustee to encroach upon or borrow against the principal of the trust funds, to provide a minimum income of $2500 a month for Marion Thorne and Montgomery Thorne, under conditions outlined in the Gordon C. Thorne will; and (3) the rights of income beneficiaries of the Reserve Annuity Fund created by one of the Camp trusts.
The result of that decree was that, upon the death of Gordon Thorne, there was vested in plaintiff a life estate in one-half of the income of the Camp trusts during the life of her son, and in the entire income after his death, and one-third interest of the remainder, and there was vested in her son a life interest in one-half of the income of the trust estates and a two-thirds interest in the remainder.
This two-thirds interest in the remainder of the Camp trusts was the subject of the settlement agreement of July 30, 1956, and the decree of July 8, 1957. The principal effect of the instant decree is to lessen the trust corpus available for producing income, all of which is directed to be paid to Mrs. Thorne, and to reduce the corpus disposable by her at her death. Except for the reduction of the trust corpus and the maintenance of a minimum annual net income to Mrs. Thorne, the provisions of the trust are substantially the same.
The most important question for this court to determine is whether or not the chancellor was correct in determining that an emergency existed, which would justify the deviation and invasion of the corpus of the trusts as decreed.
The Bank contends that the facts of this case do not warrant the invasion, and that "the situation presents *172 the rare case of a beneficiary indulging in the luxury of expensive litigation to gratify her philanthropic predelictions to substitute certain undesignated charitable causes for the beneficiaries named in her son's will  and not to actually increase her income or enhance her own immediate well-being. Generous though her intent or impulses may be, these circumstances do not constitute an emergency," and that "the price required to satisfy plaintiff's whim" is too high.
The authorities cited by both sides have been examined by the court in detail and have been of great assistance in our determination of the questions presented by this appeal. We believe that an extended dissertation of the authorities cited is unnecessary.
The most important case in Illinois, on the court permitting deviation from the terms of a trust instrument, is Curtiss v. Brown, 29 Ill. 201 (1862). It was there decided that a court of chancery has jurisdiction to break in upon the provisions of a trust deed and order a disposition of the property not in accordance with its terms, and it is said at p. 230:
"Exigencies often arise not contemplated by the party creating the trust, and which, had they been anticipated, would undoubtedly have been provided for, where the aid of the court of chancery must be invoked to grant relief imperatively required; and in such cases the court must, as far as may be, occupy the place of the party creating the trust, and do with the fund what he would have dictated had he anticipated the emergency.... From very necessity a power must exist somewhere in the community to grant relief in such cases of absolute necessity, and under our system of jurisprudence, that power is vested in the court of chancery."
Therefore, we believe that the instant case presents sufficient facts to bring it within the power of a chancery court, and it is for this court to determine if the *173 chancellor exercised the power properly. The authorities consistently state that the power to break in upon the terms of a trust should be exercised with great caution.
[1, 2] It has been consistently held that only in extreme cases will a court of chancery break in upon the terms of a trust (Stough v. Brach, 395 Ill. 544, 549 (1947)), and that the exercise of the power must be based on facts showing that conditions have arisen or exigencies developed which could not have been foreseen by the donor, and that as a result of such unforeseen conditions, the beneficiaries will suffer loss (Dyer v. Paddock, 395 Ill. 288, 294 (1946)), and that the main object of the party creating the trust is best served by the court's action and the intent of the creator of the trust actually carried out (Stephens v. Collison, 274 Ill. 389, 395 (1916)). It has been conceded that "the fact that no precedent can be found in which relief has been granted under a similar state of facts is no reason for refusing it." Dodge v. Cole, 97 Ill. 338, 364; Outhet v. Follansbee, 218 Ill. App. 512, 515 (1920).
A group of cases cited involve efforts to terminate expensive and long-continued litigation. In Stephens v. Collison, 274 Ill. 389 (1916), a settlement agreement was worked out, whereby practically all of the trust provisions were ended and the property divided in accordance with the settlement agreement. One of the parties to the litigation (and not a party to the agreement) objected. The court said that the trust itself was destroyed and the intent of the testator entirely defeated, and there was no authority for such action by the court. In Altemeier v. Harris, 403 Ill. 345 (1949), involving a testamentary trust, which had been the subject of controversy from time to time, and wherein aid of the chancery court was sought to have a family compromise and settlement agreement approved, *174 the Supreme Court reviewed at length the extent to which a "family settlement agreement" may change the provisions of a will, especially when the corpus of the estate is placed in the hands of the trustees with active duties. On p. 355 the court said:
"... we are of the opinion that the object and purpose of a trust created by a will cannot be varied or terminated unless the purpose of the trust is accomplished, nor can such a trust be terminated by unanimous consent where it contains spendthrift provisions or where contingent interests cannot be definitely ascertained." (Italics ours.)
In Tree v. Continental Illinois Nat. Bank & Trust Co., 346 Ill. App. 509 (1952), this court discussed the propriety of a decree based upon a so-called "family settlement agreement" and said that the law favors family settlement agreements and quoted the rule stated by the Supreme Court in Altemeier v. Harris, supra.
The decree of February 3, 1939, construing the will of Gordon Thorne found that the dominant purpose and intent of Gordon Thorne was the welfare of Mrs. Thorne and their son, Montgomery Thorne, and that the appointment of the remainders expectant was of secondary importance. The condition of affairs which subsequently developed, obviously, was not within the contemplation of Gordon Thorne and is not the subject of any direction in the scheme of his testamentary disposition of his estate and powers of appointment. What he would have done or dictated, had he anticipated the instant situation, is pure speculation. We do believe that it was the duty of the chancellor to investigate, deliberate and decide if the requested invasion by Mrs. Thorne was for her best interest. The record shows he did all this and found the "emergency" sufficient for action by an equity court.
*175 [3] In considering what is an "emergency," we do not believe that we are confined entirely to financial "emergencies." Intense bitterness was engendered between all parties in these proceedings, as well as in the coroner's inquest examining into the death of Montgomery Thorne. The chancellor found that since his death on June 19, 1954, the most bitter accusations and counter-accusations had been exchanged between the plaintiff and the Ragens, as to the causes of the death of Montgomery Thorne and the influences which motivated him to make the will of June 10, 1954. We believe that Mrs. Thorne was presented with an emotional "emergency," which could be far more devastating than a financial "emergency."
We believe there is some analogy in this case to the "family settlement agreement" cases, and applying the Altemeier v. Harris, supra, rule, we find: (1) The purpose of the trust (welfare of Mrs. Thorne) will be accomplished; (2) It does not terminate the trust nor render ineffectual the spendthrift provisions; (3) There are no contingent interests, either definite or unascertainable. Mrs. Thorne is presently vested with the life estate and the remainder of both trusts.
[4] We conclude that the chancellor did not err in holding that an "emergency" existed, justifying the invasion of the trust corpus as by him decreed.
Having determined an "emergency" existed, which called for "a breaking in upon the provisions of a trust deed," we do not believe the fact that the trusts in question contained "spendthrift clauses" (Trust No. 9203 covered income only) should limit a court of equity in its directing an invasion of the corpus, as no case cited, which permitted deviation from trust provisions, indicated that spendthrift clauses are to be considered in any different category than other trust provisions when permitting the deviation from the *176 corpus restrictions. Here, as previously mentioned, the spendthrift clauses are not struck down or destroyed and remain intact.
Defendant-trustee Bank contends that plaintiff's attorneys were not entitled to the fees allowed. It is true that the litigation is unusually expensive, and the Bank is proper in its solicitude of Mrs. Thorne's financial interest in directing the court's attention to the personal fee agreement (which the Bank thinks is most excessive), entered into between her and her attorneys, but in view of the fact that Mrs. Thorne herself is not complaining about this fee agreement, and nowhere seeks to resist payment of the amount she personally agreed upon, this court does not believe it necessary to make any determination as to the fee agreement or the reasonableness of the fees.
[5] Defendant-trustee Bank states that the Gordon Thorne will contains an "emergency" clause in Article 6, granting the trustee discretionary power to invade the corpus, and that the chancellor erred in substituting the court's judgment for that of the trustee. It properly contends that the court should not interfere with the discretion of the trustee, even though the court would have exercised the power differently. Koenig v. Bickel, 338 Ill. App. 21. An examination of the Illinois authorities cited to support this contention indicates it has been applied in situations involving the power to select beneficiaries of charitable gifts (Continental Illinois Nat. Bank & Trust Co. v. Sever, 393 Ill. 81), directions to the trustee to sell real estate within a certain time (Martin v. McCune. 318 Ill. 585), and similar situations. We have examined Article 6 of the Gordon Thorne will, and as we have previously stated, we believe that the "emergency" found by the chancellor was the result of a condition of affairs which had developed beyond the contemplation of Gordon Thorne, and was not the subject *177 of any direction in the scheme of his testamentary disposition of his estate, and therefore the chancellor did not interfere with discretion given to the Bank by the Gordon Thorne will.
Another contention of the Bank is that the chancellor has rewritten the will of Gordon Thorne. This contention could be leveled at the decree of February 3, 1939, which struck down a very important part of the testamentary plan set forth in the will. That decree in effect rewrote the will, when it provided that the remainder disposition provisions were invalid, and that the remainder vested at the death of Gordon Thorne in Mrs. Thorne and her son. We believe this was a rewriting of his will, found necessary because of the rule against perpetuities, and the remainder was disposed of in a fashion far different than the provisions of his will. The "emergency" found by the chancellor, in the instant case, has resulted in a court-ordered disposition of part of the corpus, to an extent which obviously was not contemplated by the decedent. This result can be found in most of the cases following the rule laid down in Curtiss v. Brown, supra, and we believe this case fits in with the language used on p. 228:
"It is insisted for the plaintiff in error, that the court of chancery has not the power in any case to intermeddle with or touch an estate which is held in trust for a married woman. That the terms of the deed, creating the trust, are like iron bands, rigid and unyielding, and that no human power can unloose or even adjust them, no matter what emergency or necessity may arise, even though they may destroy the whole interest designed for the beneficiary, and created by the deed or other instrument by which it is evidenced. We do not think so great a defect exists in our system of jurisprudence as is assumed by this position."
*178 As expressed in that case, from very necessity, a power must exist somewhere in the community to grant relief in the situation presented by the instant case, and we believe that power is vested in a court of chancery and was properly exercised by the chancellor.
We conclude the decree should be and it is hereby affirmed.
Affirmed.
KILEY, P.J. and LEWE, J., concur.