THE DEPARTMENT OF MENTAL HEALTH AND DEVELOPMENTAL DISABILITIES, Petitioner-Appellee, *v.* THE FIRST NATIONAL BANK OF CHICAGO, Trustee, *et al.*, Respondents-Appellants.

First District (5th Division)    No. 81-169

Opinion filed February 11, 1982.

Joseph L. Mack, of Chicago, guardian ad litem for appellant Janet Nice Fredericks.

Gann, McIntosh, Flaherty & Parker, of Chicago, for other appellants.

Tyrone C. Fahner, Attorney General, of Chicago (Joseph D. Keenan, III, Special Assistant Attorney General, of counsel), for appellee.

PRESIDING JUSTICE SULLIVAN delivered the opinion of the court:

The sole issue presented in this appeal is whether the trial court erred in finding that petitioner was entitled to recover the costs of providing institutionalized care to adult incompetents from the income and principal of strict spendthrift trusts.

Petitioner sought an order requiring respondents to reimburse it for the costs of past, present, and future maintenance and care of Janet Nice Fredericks (Janet) and Constance Nice (Constance), the adult income beneficiaries of spendthrift trusts created under the wills of their deceased parents. It is alleged in the second amended petition that Janet has been cared for by petitioner intermittently from October 1959 to date;[1] that Constance was cared for intermittently from 1959 to June 1977; that the costs incurred by petitioner in caring for both have been only partially reimbursed; and that demands made upon respondents for full reimbursement have been refused.

In their answer, respondents alleged that at his death on January 18, 1974, the father of Janet and Constance left a will which created, in effect, strict spendthrift trusts—the income of each to be paid for life to or for the benefit of Janet and Constance, with discretion given the trustees to accumulate income and add it to principal and, as further provided by the will, to use such principal for any "unusual expenses caused by illness, accident or other unexpected misfortune" of the beneficiaries; that the trusts were initially funded by distributions from the probate estate on November 10, 1975; that the mother of Janet and Constance died June 26, 1974, leaving a will which created strict spendthrift trusts for Janet and Constance identical in all material respects to those created by her husband's will; and that those trusts were funded by distributions from her probate estate on June 28, 1976.

It was stipulated that the respondents, as trustees of the trusts, were not liable to petitioner for reimbursement of charges incurred by either

---

[1] The complaint was filed in June 1979.

Janet or Constance while hospitalized for treatment in a State facility prior to January 18, 1974; that the unreimbursed costs incurred by Constance from April 9, 1974, to September 5, 1974, and from December 16, 1976, to March 21, 1977, was $5,826.80; and that the unreimbursed costs incurred by Janet from January 19, 1974, to September 30, 1979, was $43,405.03 and has been accruing since October 1, 1979, at the rate of $948 per month.

The trial court appointed a guardian ad litem for Janet and a trustee for the remainder interests not in being. In the judgment order from which this appeal is taken, the court found petitioner entitled to recover from the trusts all unreimbursed treatment charges incurred by Janet and Constance from the date of funding of the trusts and to receive payment for all continuing treatment charges—such amounts to be taken first from trust income and, if insufficient, from a reasonable amount of principal as agreed to by the parties.

OPINION

This appeal brings us the question as to whether petitioner, having provided institutional care for the adult beneficiaries of the spendthrift trusts, may recover the cost of that care from the trusts.

Relevant to this question are paragraphs 1 and 2 of article V of both wills, which are as follows:

"1. If at any time any person to whom the Trustees are directed in this instrument to pay any income is under legal disability or in the opinion of the Trustees is incapable of properly managing her affairs, the Trustees may use so much of such income for her support, maintenance and comfort as the Trustees determine to be required for those purposes.

2. The Trustees either may expend directly any income or principal which they are authorized in this instrument to use for the benefit of any person or may pay it over to her for her use or to her parent or guardian or to any person with whom she is residing without responsibility for its expenditure. The Trustees shall withhold any such income not so used and at their discretion add it to principal * * *."

In general, the rules for construction of written instruments, including contracts, deeds and wills, apply to the interpretation of trusts—the question of paramount importance being the settlor's intention, which if unambiguous is gathered from the whole instrument creating the trust (*Storkan v. Ziska* (1950), 406 Ill. 259, 94 N.E.2d 185), and such intention will be given effect if not in conflict with any rule of law or the public policy of the State (*United States Trust Co. v. Jones* (1953), 414 Ill. 265, 111 N.E.2d 144).

It is undisputed that the beneficiaries were incapable of properly managing their affairs, and because the trustees determined under article V that no trust funds were required for their support, it is the position of respondents that the trusts were not subject to the claims of petitioner.

To the contrary, petitioner maintains that it was entitled to reimbursement by virtue of section 5—105 of the Mental Health and Developmental Disabilities Code (Code) (Ill. Rev. Stat. 1979, ch. 91½, par. 5—105), which provides in relevant part:

> "Each recipient of services of the Department [of Mental Health and Developmental Disabilities] and the estate of such recipient, is liable for the payment of sums representing charges for services to such recipient at a rate to be determined by the Department in accordance with this Act. If such recipient is unable to pay or if the estate of such recipient is insufficient, the responsible relatives are severally liable for the payment of such sums, or for the balance due in case less than the amount prescribed under this Act has been paid."

It is essentially the contention of petitioner that the interests of the beneficiaries in the trusts are estates, as that term is used in section 5—105.

The term "estate" has a very broad meaning, encompassing "property of all kind, real as well as personal" (*Wingard v. Harrison* (1929), 337 Ill. 387, 390, 169 N.E. 232, 233), and we note that in *Grames v. Norris* (1954), 3 Ill. 2d 112, 120 N.E.2d 7, where a trust was created for the benefit of an incompetent son, the court, relying in part on an older version of what is now section 5—105 (see Ill. Rev. Stat. 1951, ch. 91½, par. 9—19), held that the trust income was an estate of the incompetent and, consequently, that payment therefrom was required for the State's costs of providing maintenance. It also has been held that the costs of a patient's maintenance and care may be satisfied from both the income and principal of the patient's estate. (*State of Illinois, Department of Public Welfare v. Foster* (1958), 13 Ill. 2d 55, 147 N.E.2d 319.) While none of the cases cited involved spendthrift trusts, it appears that a number of courts in other jurisdictions have endorsed the view that a spendthrift trust created for the benefit of an incompetent is vulnerable to the claims of public authorities for the care of such individual where the authorities are permitted by statute to recover from the trust funds in satisfaction of their claims. *Estate of Lackmann v. Department of Mental Hygiene* (1958), 156 Cal. App. 2d 674, 320 P.2d 186; *Walters' Case* (1924), 278 Pa. 421, 123 A. 408; *In re Hohenshieldt's Estate* (1932), 105 Pa. Super. Ct. 18, 159 A. 71; also see *Bureau of Support v. Kreitzer* (1968), 16 Ohio St. 2d 147, 243 N.E.2d 83.

A contention similar to that of respondents here was made in *Estate of Lackmann v. Department of Mental Hygiene,* where the court held

that a spendthrift trust granting "complete and absolute discretion" to the trustee as to the expenditures for the support of an incompetent beneficiary was liable for the care and treatment costs incurred by the State and that the trustee's refusal to reimburse the State was contrary to the public policy of the California Welfare and Institutions Code of providing cost-free care only to the needy. Its ruling was based in part on a provision of that statute which required certain relatives of a mentally ill person or such person's estate to assume the costs of care in a State facility, and it noted that the absence of specific reference to trustees in the statute did not signify a legislative intent to immunize trusts. Significantly, the court also found that under the language of the statute, the estate of a mentally ill person included the interest of such beneficiary in the trust and that, despite the "complete and absolute" discretion of the trustee, the State could reach the interest and the principal of the trust in question. In so holding, the court stated that "such discretion is not an arbitrary one and one which would permit the trustee to provide no support whatever for [the beneficiary] and to throw him on the charity of others or of the state." 156 Cal. App. 2d 674, 678, 320 P.2d 186, 188-89.

In adopting that reasoning, we hold that the interests of the beneficiaries in the spendthrift trusts here should be considered as estates within the meaning of that term in section 5—105 of the Code and, in this regard, we also view the omission of a specific reference to trustees in that section as not implying a legislative intent to provide free treatment in State facilities for the beneficiaries of spendthrift or other trusts.

Additionally, it is our opinion that the Code reflects a public policy akin to that expressed in *Lackmann*. Section 5—115 of the Code (Ill. Rev. Stat. 1979, ch. 91½, par. 5—115) provides in relevant part:

> "In case any recipient, the estate of any recipient, or the responsible relatives of such recipient are unable to pay the services charges for the recipient provided by this Act, then the cost of services of such recipient shall be borne by the State, * * *."

This provision, coupled with section 5—105, reflects the intent of the legislature to provide mental health care to all regardless of economic status and of making such care cost-free to the needy. Although the wills in question were executed in 1967, the Code at that time contained provisions substantially similar to those cited herein. (See Ill. Rev. Stat. 1963, ch. 91½, par. 12—21 *et seq.*; *cf. Estate of Escher* (1978), 94 Misc. 2d 952, 407 N.Y.S.2d 106 (no applicable statute existed at the time trust was created for incompetent beneficiary which would have given State enforceable claim against principal of trust for treatment costs in State hospital).) Here, respondents do not assert that the trusts are unable to pay for their care; consequently, we think that it would be inconsistent

with the policy of the Code if petitioner were to bear all the costs of such services. In this regard, it is a long-standing policy in this State to seek payment for its costs from those recipients of services who can afford to pay and thereby to lessen the burden on taxpayers. As the supreme court stated in *Kough v. Hoehler* (1952), 413 Ill. 409, 418-19, 109 N.E.2d 177, 181-82, in upholding the right of the State to require reimbursement for services rendered to mental patients:

> "The charges provided for by this act [Ill. Rev. Stat. 1951, ch. 91½, pars. 1—1 *et seq.*, 9—1 *et seq.*] are not for the support of government, nor are they measured in amount by the public needs for public purposes. It is a charge for services rendered in the care, treatment, and maintenance of each such unfortunate patient in these State hospitals * * *. [Citations.] Since these charges partake of a public charity, (rather than a governmental purpose,) the original cost of which is borne by the public, it is entirely proper and fitting that the patients, their estates and relatives, in so far as they are able, should reimburse the State for so much of the expense of their care as possible, and thereby lessen the burden upon the public."

In light of the above, we conclude that the interests of the beneficiaries in the trusts are "estates" within the meaning of that term in section 5—105 of the Code and that the refusal of the trustees to reimburse petitioner was against the policy of the Code to provide cost-free care only to those in need. For either reason, the trial court properly ordered that petitioner be reimbursed.

We think it significant, however, that the trial court ordered the amount of principal necessary for reimbursement to petitioner was to be paid "as agreed to by the parties using the guidelines set forth by this Court." This aspect of the court's order is not challenged on appeal and, in this regard, it appears that consideration could be given to the fact that one of the beneficiaries was being considered for community placement.

For the reasons stated, the judgment of the trial court is affirmed; but, since the amount of the charges for which petitioner is entitled to be reimbursed is not ascertainable from the record, this matter is remanded for the determination thereof consistent with the content of this opinion.

Affirmed and remanded.

LORENZ and WILSON, JJ., concur.