*In re* SYKES ESTATE

DEPARTMENT OF MENTAL HEALTH v OLD KENT BANK &
TRUST COMPANY

Docket No. 69303. Submitted October 5, 1983, at Grand Rapids.—
Decided December 6, 1983. Leave to appeal applied for.

In his will dated January 16, 1967, Benjamin T. Sykes, Sr.,
provided for the establishment of a spendthrift trust for the
benefit of his wife, Della A. Sykes, and son, Benjamin T. Sykes,
Jr. Benjamin Sykes, Sr., died on December 5, 1969, and his will
was admitted to probate in the Ionia Probate Court and the
trust was established. Della A. Sykes died on June 30, 1978. In
March, 1980, Benjamin Sykes, Jr., was involuntarily committed
by the probate court to the Michigan Institute of Mental
Health. He was transferred to Ypsilanti Regional Psychiatric
Hospital in June, 1980, where he remained until his death on
December 26, 1981. During that time the Michigan Department
of Mental Health provided services for him. On May 6, 1982,
the department made an annualized determination of the
financial liability of Benjamin Sykes, Jr., for the services pro-
vided in the amount of $17,657. In making that determination,
the department took into account and counted as an asset of
Benjamin Sykes, Jr., the $31,709 corpus and income balance of
the trust as reported by the trustee, Old Kent Bank and Trust
Company, in the previous annual accounting. One-half of the
trust's original net worth was found to be $15,855. The trustee
paid $2,049.60 to the State of Michigan for the cost of care for
Benhamin Sykes, Jr. The state claims that the trust still owes

REFERENCES FOR POINTS IN HEADNOTES

[1, 2] 41 Am Jur 2d, Incompetent Persons § 55 *et seq.*
  Liability of incompetent's estate for care and maintenance fur-
    nished by public institution or hospital before incompetent's
    acquisition of any estate or property. 33 ALR2d 1257.
[3] 4 Am Jur 2d, Appeal and Error § 139.
[4] 76 Am Jur 2d, Trusts § 17.
  80 Am Jur 2d, Wills § 1140.
[5] 76 Am Jur 2d, Trusts § 290.
[6] 76 Am Jur 2d, Trusts §§ 153-167.
  Validity of spendthrift trusts. 34 ALR2d 1335.

$15,607.40. For that reason, the state objected to the final accounting of the trust and made a claim against the trust for that amount. The probate court, Gerald J. Supina, J., entered an order dismissing the objection to the accounting of the trust and the state's claim against the trust. The State of Michigan, Department of Mental Health appeals. *Held:*

1. The general rule is that the interest of the beneficiary of a spendthrift trust cannot be reached by creditors of the beneficiary. One of the exceptions to this general rule concerns claims for necessary services rendered to the beneficiary. The Court noted that Michigan courts have yet to recognize this exception and distinguished cases from other states where the exception was recognized by noting that the trustees' discretion in those cases was not an arbitrary one which would permit the trustee to provide no support whatever for the beneficiary and to throw him on the charity of others or of the state and that the settlors in those cases intended to provide support for the beneficiaries.

2. Here, the trustee had complete discretion as to whether the son was to receive any payments from the trust. The son's interest in this discretionary trust is unascertainable and the son could not be certain that he would ever receive anything. It was also noted that the settlor did not intend to be the sole source of support of his son.

3. The trustee exercised its discretion in paying the $2,049 on the state's claim and did not abuse its discretion as to the payment of any of the balance.

Affirmed.

1. MENTAL HEALTH — FINANCIAL LIABILITY — DEPARTMENT OF MENTAL HEALTH.

Individuals for whom the Department of Mental Health provides care are financially liable for the services provided; such liability is based on the individual's ability to pay, however, the department may not exhaust any person's financial net worth below an amount equal to 50% of the person's original financial net worth (MCL 330.1802, 330.1818, 330.1826; MSA 14.800[802], 14.800[818], 14.800[826]).

2. MENTAL HEALTH — FINANCIAL LIABILITY — DEPARTMENT OF MENTAL HEALTH.

The Department of Mental Health determines the financial liability of individuals for the services provided by the department based on the factors of: income, expenses, insurance proceeds,

number and condition of dependents, assets and liabilities (MCL 330.1818; MSA 14.800[818]).

3. APPEAL — PROBATE COURTS.
The standard of review to be applied to findings of a probate court sitting without a jury is whether those findings are clearly erroneous.

4. WILLS — TRUSTS — JUDICIAL CONSTRUCTION.
The intention of the testator or settlor is paramount in the construction of wills and trusts (MCL 554.352, 700.133; MSA 26.1192, 27.5133).

5. TRUSTS — TRUSTEES — JUDICIAL RESTRAINT.
The courts will not interfere with a trustee's exercise of his discretion in matters which the settlor has left to the discretion of the trustee unless the trustee has abused his discretion.

6. TRUSTS — SPENDTHRIFT TRUSTS — BENEFICIARY'S INTEREST — BENEFICIARY'S CREDITORS.
The interest of the beneficiary of a spendthrift trust generally cannot be reached by creditors of the beneficiary; one of the exceptions to this general rule concerns claims for necessary services rendered to the beneficiary, but Michigan courts have not recognized such exception.

*Frank J. Kelley,* Attorney General, *Louis J. Caruso,* Solicitor General, and *George L. McCargar* and *James M. Batzer,* Assistants Attorney General, for State of Michigan, Department of Mental Health.

*Mika, Meyers, Beckett & Jones* (by *James B. Beckett),* for Old Kent Bank & Trust Company.

Before: R. B. BURNS, P.J., and D. E. HOLBROOK, JR., and R. L. TAHVONEN,* JJ.

PER CURIAM. The State of Michigan, Department of Mental Health, appeals from an order entered December 29, 1982, dismissing its objection to the

* Circuit judge, sitting on the Court of Appeals by assignment.

accounting of a trust and its claim against the trust.

The dispute in this case concerns the corpus and income balance of a trust established by Benjamin T. Sykes, Sr., in his will of January 16, 1967. The will provides in pertinent part:

"(1) My Trustee shall apply such amounts from the income and principal hereof to or for the benefit of my said wife, Della A. Sykes, and my son, Benjamin T. Sykes, Jr., in such proportions and amounts and at such intervals as the Trustee shall deem necessary to provide for their proper care, support and welfare, always considering the means reasonably available to each such beneficiary from all sources; any unused income in any accounting year shall be accumulated and added to the principal hereof; the amounts of and occasions and necessity for and preferential use between beneficiaries of any such income or principal payments shall be wholly within the discretion of my Trustee and its judgment shall be conclusive."

The parties stipulated to the following facts regarding Benjamin T. Sykes, Jr. Much of his adult life was spent in jails in Michigan and in other states. His father knew of his imprisonments when he executed his will. Sykes, Sr., provided only occasional and relatively small amounts to his son for his support during his lifetime. In March, 1980, the son was involuntarily committed by the probate court for the County of Ionia to the Michigan Institute of Mental Health. He was transferred to Ypsilanti Regional Psychiatric Hospital in June, 1980, where he remained until his death on December 26, 1981. During that time the Michigan Department of Mental Health provided services for him.

Individuals for whom the Department of Mental Health provides care are financially liable for the

services provided. MCL 330.1802; MSA 14.800(802). Financial liability is based on the individual's ability to pay. MCL 330.1818; MSA 14.800 (818). The department determines financial liability based on the following factors: income, expenses, insurance proceeds, number and condition of dependents, assets, and liabilities. *Id.* The department is directed not to exhaust any person's financial net worth below an amount equal to 50% of the person's original financial net worth. MCL 330.1826; MSA 14.800(826).

On May 6, 1982, the Department of Mental Health made an annualized determination of the financial liability of Benjamin Sykes in the amount of $17,657. In making that determination, the department took into account and counted as an asset the corpus and income balance of the trust. The department calculated the trust balance at $31,709, which figure was the trust balance reported by the trustee in the previous annual accounting. One-half of the original net worth was found to be $15,855. The trustee paid $2,049.60 to the State of Michigan for the cost of care of the son. The state claims that the trust still owes $15,607.40. For that reason, the state objected to the final accounting of the trust and made a claim on the trust for that amount.

The issue before this Court is whether the trustee abused its discretion in refusing to pay the state's claim against the beneficiary for the value of the services provided the beneficiary in a state mental institution.

The standard of review where a probate court sits without a jury is whether the court's findings are clearly erroneous. *In re Wojan Estate,* 126 Mich App 50; 337 NW2d 308 (1983). In construing wills and trusts, the intention of the testator or

settlor is paramount. MCL 700.133, 554.352; MSA 27.5133, 26.1192. As to those matters which the settlor has left to the discretion of the trustee, the courts will not interfere with the trustee's exercise of his discretion unless the trustee has abused his discretion. *Moss v Axford,* 246 Mich 288; 224 NW 425 (1929).

The general rule is that the interest of the beneficiary of a spendthrift trust cannot be reached by creditors of the beneficiary. Restatement Trusts, 2d, § 157. One of the exceptions to that general rule concerns claims for necessary services rendered to the beneficiary. *Id.,* § 157(b).

The first matter to be considered is whether the provision of services in a state mental institution can be considered "necessary services" so that the son's interest in the spendthrift trust could be reached in satisfaction of the claim, if this exception is acknowledged. To date Michigan courts have not recognized the necessary services exception to the general rule that the interest of the beneficiary of a spendthrift trust cannot be reached. The courts of other states, however, have permitted state institutions of which the beneficiary of a spendthrift trust was an inmate to reach that interest. See *Estate of Lackmann v Dep't of Mental Hygiene,* 156 Cal App 2d 674; 320 P2d 186 (1958); *Dep't of Mental Health & Developmental Disabilities v First National Bank of Chicago,* 104 Ill App 3d 461; 432 NE2d 1086 (1982). The son herein was involuntarily committed to the state institution which implies that a determination was made that it was necessary to provide such care for him. For purposes of this appeal we will assume, *arguendo,* that the services rendered in this case were "necessary services" within the meaning of § 157(b).

The next consideration is whether the trust was properly considered an asset of the son by the state in determining the son's financial liability for services rendered to him. As noted above, Michigan statutes provide that individuals are liable to the extent of their financial ability for services provided by the Department of Mental Health. In determining an individual's financial liability the department's "consideration shall include, but need not be limited to, * * * assets * * *". MCL 330.1818; MSA 14.800(818). In *Dep't of Mental Health & Developmental Disabilities, supra,* an Illinois statute provided that recipients of services of the Department of Mental Health were to be liable for the payment for services rendered to such recipients. That court held that interests of adult income beneficiaries of spendthrift trusts were "estates" within the meaning of the statute providing for financial liability. Similarly, in *Estate of Lackmann, supra,* the estate of a mentally ill person was held to include that person's interest in a spendthrift trust.

Those cases can be distinguished, however, from the case at bar. In both cases, despite the "complete and absolute" discretion of the trustee, the state was allowed to reach the trust because "such discretion is not an arbitrary one and one which would permit the trustee to provide no support whatever for [the beneficiary] and to throw him on the charity of others or of the state". *Dep't of Mental Health & Developmental Disabilities, supra,* 104 Ill App 3d 465; 432 NE2d 1088. It was determined that the settlor intended to provide the support for the beneficiaries.

In the case at bar, however, the trustee had complete discretion as to whether the son was to receive *any* payments from the trust. Not only

were the amount and frequency of payments for the son's support left to the complete discretion of the trustee, but it was directed to always consider "the means reasonably available to [the son] from all sources". In other words, the son's interest in this discretionary trust is unascertainable; *i.e.,* he could not be certain that he would ever receive anything. Moreover, we find the settlor did not intend to be the sole source of support of his son. We hold the trustee exercised its discretion in paying the $2,049 on the state's claim and find the trustee did not abuse its discretion as to the balance.

Affirmed.