THE DEPARTMENT OF MENTAL HEALTH AND DEVELOPMENTAL DISABILITIES, Petitioner-Appellee, v. KEVIN E. PHILLIPS, Trustee, *et al.*, Respondents-Appellants.

First District (1st Division)   No. 84–1641

Opinion filed May 7, 1985.

Lee Ann Watson and David K. Schmitt, both of Katten, Muchin, Zavis, Pearl & Galler, of Chicago, for appellants.

Neil F. Hartigan, Attorney General, of Springfield (Jill Wine-Banks, Solicitor General, and Kathryn A. Spalding, Assistant Attorney General, of Chicago, of counsel), for appellee.

JUSTICE BUCKLEY delivered the opinion of the court:

This appeal arises out of an action brought by the Illinois Department of Mental Health and Developmental Disabilities (the Department) against the trustee of a discretionary spendthrift trust. The Department sought reimbursement for the cost of services provided to the trust's beneficiary, a mentally handicapped young adult residing at the Waukegan Developmental Center. On cross-motions for summary judgment, the trial court entered judgment in favor of the Depart-

ment, holding that the trustee had abused his discretion in failing to reimburse the Department. The trial court further denied the trustee's alternative motion for reformation of the trust and ordered payment from the trust for the services provided at State expense. We reverse and remand for further proceedings.

The record reveals that in February 1974 Sue Phillips established an *inter vivos* trust for the benefit of her 18-year-old son, Steven. Steven is severely retarded and has required institutional care since birth. He is currently a resident at the Waukegan Developmental Center, having resided there since his 21st birthday in November 1976. Steven's brother, Kevin Phillips, was appointed trustee of the trust.

Pursuant to the terms of the trust, the trustee was given "sole and absolute discretion" to expend the trust's income or corpus "as the trustee deems necessary and advisable for the beneficiary's education (including college or a professional education), maintenance, medical care, support, general welfare and comfortable living." The trust also contains an express spendthrift provision prohibiting the voluntary or involuntary assignment or alienation of the income or corpus to claims of creditors or legal process. The trust further provides that upon Steven's death the trust assets are to be distributed to the then living issue of Steven's father *per stirpes*. Those remaindermen are presently Steven's two brothers and his two minor nephews.

The trust assets are currently valued at less than $75,000. The trustee has never made any distributions of the trust's principal or income to Steven but has reinvested all the income for Steven's benefit. Steven has no assets or source of income other than his interest in the trust.

In June 1983, the Department initiated this action by filing a petition for service charges against the trustee and Steven. The Department sought reimbursement for the cost of services provided Steven as an in-patient at the Waukegan Developmental Center since 1976. In its petition, the Department alleged that $73,474.40 was due for the period from November 4, 1976, through April 30, 1983, with $948 per month accruing thereafter.

The Department alleged that the trustee's failure to pay the Department was an abuse of discretion and contrary to the terms of the trust and that the trust is part of Steven's "estate" subject to the Department's surcharge pursuant to section 5—105 of the Illinois Mental Health Code. (Ill. Rev. Stat. 1983, ch. 91½, par. 5—105.) The trustee answered the petition, denying that reimbursement should be made and that he abused his discretion. Alternatively, the trustee sought

reformation of the trust's language to expressly prohibit use of the trust's assets for reimbursement to the Department for Steven's primary support and to provide that the trust could only be used as supplementary support for Steven's needs other than those provided by public aid.

Because there were no material factual disputes, the parties filed cross-motions for summary judgment and judgment on the pleadings. The trial court denied the trustee's motion and granted the Department's cross-motion for summary judgment, specifically basing its decision on this court's opinion in *Department of Mental Health & Developmental Disabilities v. First National Bank* (1982), 104 Ill. App. 3d 461, 432 N.E.2d 1086. The order granting summary judgment was stayed, however, pending a ruling on the trustee's alternative petition for reformation of the trust.

In support of the alternative petition, the trustee submitted an affidavit by Sue Phillips reaffirming that at the time she established the trust her intent was to provide a source of funds supplementary to public aid. The trial court denied the alternative petition, reasoning as follows:

> "The revisions suggested, and I have read them, are. not merely those necessary to refine the language of the original trust instrument. The suggested revisions do not clear up ambiguities, because I believe there are no ambiguities in the original document, and the revision does not serve to fill a void in the instructions to the Trustee. On the contrary, these revisions to my view, constitute an entirely new remake of the trust instrument. The revisions constitute a total and complete abandonment of the initially stated trust purpose, and postulate a substitution of an entirely new scheme of things. The revisions totally distort the original trust purpose."

The trial court also expressed some concern in its ruling that the trustee might not be acting in Steven's best interests since the trustee was a potential remainderman of the trust. In a motion for reconsideration, the trustee, on behalf of himself and the other contingent remainderman, offered to waive all remainder interest in the trust in favor of the Department. Further, the trustee proposed that a mutually agreeable third party be substituted to act as trustee of the trust as reformed. The trial court denied the motion for reconsideration, acknowledging that it had misperceived the trustee's motives but still believed "the trust is clear and unambiguous, and that being the case, it must be followed in those terms by the Court."

On appeal, respondents contend that the trial court erred in deny-

ing reformation of the trust in a manner consistent with the settlor's intent and necessary to preserve the trust. Respondents argue that the trust was drafted with reference to the then existing law, which would not have given the State a right of reimbursement from a discretionary spendthrift trust; that the settlor's intent was clearly not to reimburse the State but rather to provide a source of funds for Steven in the event he needed additional support or medical care which the State was unable or unwilling to provide; that this court's decision in *Department of Mental Health & Developmental Disabilities v. First National Bank* (1982), 104 Ill. App. 3d 461, 432 N.E.2d 1086, represents an unforeseen change of law which frustrates the settlor's original intent in creating the trust by permitting the State to reach the assets of a discretionary spendthrift trust for reimbursement; and that reformation should therefore be permitted in order to give effect to the settlor's original intent and to preserve the trust. We agree.

■ It is well settled in Illinois that the provisions of a trust can be modified in order to carry out the intentions of the settlor if unforeseen events occur which would otherwise frustrate the settlor's purpose. (See *Curtiss v. Brown* (1862), 29 Ill. 201; *American State Bank v. Kupfer* (1983), 114 Ill. App. 3d 760, 449 N.E.2d 1024.) The power to do so, however, is exercised with great caution and only in extreme cases. (*Stough v. Branch* (1946), 395 Ill. 544, 70 N.E.2d 585.) The rationale for permitting trust modification was advanced over a century ago by our supreme court in *Curtiss*, which held:

"Exigencies often arise not contemplated by the party creating the trust, and which, had they been anticipated, would undoubtedly have been provided for, where the aid of the court of chancery must be invoked to grant relief imperatively required; and in such cases the court must, as far as may be, occupy the place of the party creating the trust, and do with the fund what he would have dictated had he anticipated the emergency. *** From very necessity a power must exist somewhere in the community to grant relief in such cases of absolute necessity, and under our system of jurisprudence, that power is vested in the court of chancery." 29 Ill. 201, 230.

Similarly, in *Thorne v. Continental National Bank & Trust Co.* (1958), 18 Ill. App. 2d 163, 151 N.E.2d 398, this court affirmed a chancery court's reformation of a testamentary trust where it was apparent that the beneficiaries would suffer absent a reformation. Relying on *Curtiss* and its progeny, the *Thorne* court reiterated the circumstances which permit modification of a trust:

"[(1)] facts showing that conditions have arisen or exigencies developed which could not have been foreseen by the donor, and [(2)] that as a result of such unforeseen conditions, the beneficiaries will suffer loss [citation], and [(3)] that the main object of the party creating the trust is best served by the court's action and the intent of the creator of the trust actually carried out [citation]." 18 Ill. App. 2d 163, 173.

We believe all the requisite elements for trust reformation are present here. The purpose of the trust, to provide Steven with care that the Department is unwilling or unable to provide, will be totally thwarted if the Department's reimbursement claim is allowed. Moreover, the allowance of that claim results from this court's decision in *Department of Mental Health & Developmental Disabilities v. First National Bank* (1982), 104 Ill. App. 3d 461, 432 N.E.2d 1086, where we held for the first time that the State could reach a beneficiary's interest in a discretionary spendthrift trust for the cost of services provided. The trial court agreed that *First National Bank* constituted a change of law but concluded it was not unforeseen, reasoning as follows:

"Paragraph 15 of the Trust states 'All questions of interpretation of this document shall be governed by the laws of Illinois.' This provision seems to refute any suggestion that change in law should justify a change in Trust terms, as being unexpected or unforeseeable. Contrary, it seems to me, to be the more reasonable interpretation of that language; that this Trust will continue as drafted, notwithstanding changes in Illinois law, as they may come down during the life of the Trust instrument."

While we agree that changes in the law may have been contemplated, it cannot be said that the settlor anticipated a change in the law which would totally frustrate the very purpose the trust was to serve. The Department also does not dispute the fact that the reimbursement it seeks will totally exhaust the trust assets, thereby leaving Steven without any funds for the rest of his life.

The Department cites *Chicago Title & Trust Co. v. Schwab* (1952), 347 Ill. App. 233, 106 N.E.2d 857, and *Howard v. Chapman* (1968), 101 Ill. App. 2d 135, 241 N.E.2d 492, for the proposition that changes in the law do not warrant trust modification. However, in both these cases, trust beneficiaries sought modification of a trust in order to limit or avoid income tax liability. Since our tax laws are subject to virtually constant revision, the courts reasoned that a trust settlor should be presumed to have known that the tax law might be changed at any time in the future. Accordingly, such a change in the law could

hardly be considered an unforeseeable event justifying trust modification. Also, tax law changes will not ordinarily frustrate a settlor's purpose in forming the trust.

In the present case, the Department does not dispute that *First National Bank* was a case of first impression, representing a change in the law regarding discretionary spendthrift trusts. At the time Steven's trust was executed, nearly eight years before *First National Bank*, Sue Phillips could not have known that the trust she was creating could be used to reimburse the Department. The trust gave the trustee "sole and absolute discretion" in expending the income or corpus of the trust for Steven's benefit. The settlor also included a spendthrift provision in the trust to protect the trust's assets from creditors' claims. Both of these provisions are consistent with the settlor's desire to establish a source of funds for her handicapped son in the event his needs exceeded those the Department was willing to provide. In short, Sue Phillips took every reasonable step to insure that such a fund would be available to her son and free from the claims of all creditors, based upon the law as it existed at the time the trust was executed. From the above, it is clear that this court's decision in *First National Bank* represents an unforeseen contingency which will result in a complete loss to the trust beneficiary and a total thwarting of the settlor's intent. Trust modification is therefore proper.

Public policy considerations favoring Department reimbursement do not require a contrary result. This is not a case where the settlor is responsible for the beneficiary's support and wishes to have the State shoulder that burden, even though the trust's assets can cover the costs. Rather, Steven is a young adult and his mother and family are not liable for his support. Here, the mother's desire to provide a fund for her son's education and care in the event that the Department is unable or unwilling to provide such services is perfectly understandable. A change in the law subsequent to the creation of this trust should not be permitted to totally frustrate the legitimate objectives of this settlor.

In view of the foregoing, we hold that trust modification is appropriate in this case based on an unforeseen change of law in *First National Bank* which will totally deplete the trust assets and completely vitiate the settlor's intent. However, we agree with the trial court to this extent—the proposed trust modifications are exceedingly expansive and go well beyond the changes necessitated by this court's decision in *First National Bank*. On remand, we believe that the original trust language should be retained as much as possible and that the

trust should only be modified to more clearly reflect the settlor's intent of providing a fund "for the beneficiary's education (including college or a professional education), maintenance, medical care, support, general welfare, and comfortable living," but only to the extent that the Department is unwilling or unable to provide such services.

Reversed and remanded for further proceedings.

CAMPBELL and O'CONNOR, JJ., concur.